NEW JERSEY ORTHOPÆDIC HOSPITAL AND DISPENSARY, APPELLANT, v. ROBERT WRIGHT, AS HEIR AND RESIDUARY LEGATEE, ETC., RESPONDENT.

Submitted December 2, 1920—Decided February 28, 1921.

1. A subscription to a charitable enterprise stands on the same footing as any ordinary contract in requiring a legal consideration and acceptance to support it.
2. Where the jury might have found that the subscriber to a charitable hospital stipulated as a condition of her promise to contribute to its building fund that her subscription was to be applied to the building of an operating room to be named by her, and that the hospital authorities were to obtain the waiver in her favor of a similar privilege held by another subscriber, and the subscription was payable on demand—*Held,* that there was evidence for the jury of a legal consideration, and that it was error to nonsuit because no consideration appeared.

---

On appeal from the Essex County Circuit Court.

For the appellant, *Everett Colby* and *Edward D. Duffield.*

For the respondent, *Charles F. Lighthipe.*

The opinion of the court was delivered by

PARKER, J. This is an action upon a subscription to a charity. The trial judge ordered a nonsuit upon the ground that the promise, concededly made, had no consideration to support it, during the lifetime of the subscriber, and, consequently, lapsed by her death. It was urged also as a ground of nonsuit that there had been no acceptance of the subscription, but the court held, and rightly, as we view it, that the jury were entitled to find that the power of the "campaign committee" to solicit and obtain subscriptions reasonably implied the power to accept them, and that the committee had in fact accepted this one; and confined the ground of nonsuit to absence of consideration.

We conclude that the question of consideration was for the jury, for reasons presently to be stated.

The subscriber was Mrs. Jessie R. Barr, who died on January 2d, 1917. She had been greatly interested, according to the testimony, in the campaign for a fund to enlarge and improve the hospital building of plaintiff corporation, and had told members of the committee to call upon her when the campaign started, as she intended to contribute. They called, but at an inopportune time, and later she wrote for them to come again, which they did. She then said she had decided to give $5,000 to be used to build an operating room, and the solicitors told her they feared this application of the money would be impracticable, as a Mr. Graves had already asked for that privilege. She then requested the solicitors to see Mr. Graves and arrange with him, if possible, to step aside in her favor. They did so and obtained his consent, returned to Mrs. Barr and told her that her subscription would be used for the operating room, which would be named as she wished, and thereupon she authorized one of them to sign the subscription card with the signature "A Friend," so that her name would not become public. This was done and the committee left, and a day or two later mailed her a formal acknowledgment of the subscription.

One inference that the jury might legitimately draw from this evidence is that Mrs. Barr based her subscription on the

agreement, first, that the money, while part of the general fund, was to be specifically applied to a stated purpose, viz., the building of an operating room; secondly, that the operating room was to bear a name suggested by her; thirdly, that she would contribute if the committee would obtain the waiver by Mr. Graves of his prior claim on the room, and that they actually did obtain that waiver. Any one of these things would be legal consideration for the promise. A legal consideration is, of course, requisite (37 *Cyc.* 485; *Twenty-third Street Church* v. *Cornell,* 117 *N. Y.* 601; 23 *N. E. Rep.* 177) ; but at law its adequacy is not, as a rule, inquired into; and in this class of cases where public and charitable interests are involved, the courts lean towards sustaining such contracts, sometimes on consideration which, in a purely business contract, might be regarded as questionable. Such cases as *Thompson* v. *Page,* 1 *Metc.* 565; *Ives* v. *Sterling,* 6 *Id.* 310, and *Watkins* v. *Eames,* 9 *Cush.* 537, are illustrative of this tendency. We need not discuss *in extenso* the elementary rule that a legal consideration may take the form of a benefit to the promisor or an inconvenience or loss to the promisee (*Shadwell* v. *Shadwell,* 6 *Eng. Rul. Cas.* 9, and notes; *Holt* v. *United Security, &c., Co.,* 74 *N. J. L.* 795, 798) ; it is enough to say that the considerations mentioned above contain both forms, especially the compliance by agents of plaintiff with a particular stipulation of Mrs. Barr, represented by the defendant in this action, that a specific application of the money be secured and reserved for her. In this aspect the case resembles those decisions, holding that a promise to pay money in consideration of naming a child is enforceable. *Dieffenderfer* v. *Scott,* 5 *Ind. App.* 243; 32 *N. E. Rep.* 87; *Eaton* v. *Libbey,* 165 *Mass.* 218; 42 *N. E. Rep.* 1127; *Gardner* v. *Denison,* 217 *Mass.* 492; 105 *N. E. Rep.* 359.

On this phase of the case the trial judge erred; and as no question was raised of the fact of subscription, and there was enough in the evidence to supply the other essentials of a legal contract unperformed, the case should have been submitted to the jury under proper instructions. The judgment will accordingly be reversed, to the end that a *venire de novo* be awarded.

*For affirmance*—THE CHIEF JUSTICE, BERGEN, KALISCH, KATZENBACH, ACKERSON, JJ.   5.

*For reversal*—THE CHANCELLOR, SWAYZE, TRENCHARD, PARKER, MINTURN, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, JJ.   10.