[Civ. No. 10027. First Appellate District, Division One.—January 27, 1937.]

CHARLES E. GREENFIELD, Jr., Administrator, etc., et al., Respondents, v. SUDDEN LUMBER COMPANY (a Corporation), Appellant.

Philip S. Ehrlich and Albert A. Axelrod for Appellant.

C. E. Greenfield, Jr., *in pro. per.,* Williamson & Wallace and Reuben C. Carlson for Respondents.

McNUTT, J., *pro tem.*—Of a Washington corporation the above-named decedents Frank D. Oakley and J. C. Buchanan, the plaintiffs Richard T. Sullivan and K. B. Kellogg, all of whom will be referred to hereinafter as respondents, and the defendant corporation, Sudden Lumber Company, were stockholders, defendant owning something short of a majority representing an investment of about $130,000. The Washington company transferred its assets to an Oregon corporation, the Washington company subscribed for and received 476 shares of the preferred stock for which it gave its note for $47,600. When the Oregon company wished payment of the note, the Washington company, whose sole assets comprised the stock of the Oregon company and whose income was its dividends, could not pay it. At a meeting of the stockholders of the Washington company January 29, 1926, the company was authorized to borrow the money to meet the obligation; while at a later meeting January 25, 1927, the matter was discussed with the result that the said authorization was ratified and confirmed. Thereafter the Washington company borrowed from respondents the principal and interest of the debt, to wit $49,715.98, and gave them its note, and as collateral put up with them the said preferred and common stock of the Oregon company. Incidentally, the respondents had borrowed a like amount from the National Bank of Tacoma on their credit backed by the note to them of the Washington company.

In a complaint alleging in one count that the defendant (appellant) had made an agreement with respondents that in consideration of the latter's refraining from enforcement of their note against the Washington company and sale of the collateral defendant would pay them on demand $23,000 with interest, its proportionate share of the debt of the Washington company; and in another count upon an account stated judgment went for plaintiffs and defendant has appealed. The appellant attacks the judgment upon many grounds: that no certain contract had been proved; that one Fennimore, secretary-treasurer of defendant corporation, had no author-

ity to bind his company; that the agreement (if any there was) was without consideration because while respondents forbore suit on the original obligation there was no agreement to forbear; that the cause was within and hence was barred by the statute of frauds; that the action was barred by the statute of limitations; that the finding of an account stated was improper; that because on filing of the complaint there was included as a plaintiff the name of a stockholder who had died the court erred in permitting substitution of his representative as a party; failure to find on a material issue; and prejudicially erroneous rulings.

Mr. Ehrlich at times here material was a director of appellant Sudden Lumber Company. July 5, 1928, F. D. Oakley advised Mr. Ehrlich by letter that the debts of the Washington company to respondents growing out of the Oregon company stock purchase was over $48,000; that Mr. Ehrlich's company had been requested to put up its share and had refused; that it would be necessary to sell the stock the Washington company owned in the Oregon company unless the stockholders contributed their proportionate shares of the purchase price of the Oregon preferred stock; that Oakley and the others (now respondents) did not intend to carry the load much longer and expressed umbrage at the attitude of Sudden Lumber Company. Mr. Ehrlich replied and asked for a detailed statement of the affairs of the Washington company. August 14th Oakley replied in detail, and advised him that the Oregon company had called the $47,600 balance stock purchase price. August 8, 1929, the Washington company, through its president J. C. Buchanan, wrote appellant that the bank had demanded payment of the money respondents had borrowed for the benefit of the Washington company, and that such demand might be met in either of two ways: *prorata* assessment of the shareholders, or sale of assets, adding: "If advised of your willingness to pay your *prorata* assessment within ten days the officers will, if possible, proceed on the assessment basis. If not so advised, a sale of the assets will be necessary in order to have the funds in hand by August 20th when payment must be made to avoid litigation. Yours very truly, J. C. Buchanan, President." Appellant then sent its Mr. Peterson to Reedsport, where the Oregon company operated, and its Mr. Fennimore to Tacoma, where he conferred with two of the respondents. One of these respondents, Mr. Sullivan, testified that he and

Mr. Oakley advised Fennimore that the Washington company would have to pay to the respondents the money they had loaned it; that they had too much credit tied up; that they could reduce the amount by foreclosing and selling the assets of the Washington company; or that the same might be reduced by other stockholders taking up part of the debt. They further told Fennimore that they were less concerned with the manner in which the debt was reduced than they were with knowing that some definite plan might be adopted. Fennimore replied that his yard manager Peterson was at Reedsport, that he was going there, and that on his return to San Francisco he would advise the witness as to the position appellant would take, that it was going to stay in or not stay in.

Fennimore and Peterson having returned to San Francisco the former advised respondents by letter September 4, 1929, that a meeting of appellant's directors had been held at which he reported the results of his Tacoma visit, and that Peterson had reported his impressions of the Oregon corporation. That as a result appellant Sudden Lumber Company had decided to take care of its share of the obligation with regard to the preferred stock, provided that the Washington company could be dissolved, and that suitable arrangements to take care of the payment could be made as appellant would not be in a position to immediately pay the whole amount. He stated the matter was one of procedure and that it would be necessary to make arrangements with the bank presently carrying respondents' loan. In the letter we find the following: ''Now that the matter of this company remaining with the ship is decided, will you please advise us as soon as possible as to what in your opinion is the best course to take, and at the same time just what arrangement you think we might make with the Tacoma bank. This company will then be glad to send a representative to Tacoma to do the needful.''

The representative, Mr. Fennimore, arrived at Tacoma November 8, 1929, with the power of attorney of appellant, Mr. Oakley meanwhile having answered Fennimore's letter stating that mutually satisfactory arrangements to spread payments over a reasonable length of time could be made, appellant having also meanwhile received notice of meeting of sharcholders of the Washington company for November

8th, in Tacoma, which notice stated the purpose to be "to dispose of the problems confronting the company outlined to the stockholders in my letter of August 8, 1929". Fennimore carried the proxy of Sudden Lumber Company and the power giving him unlimited authority. At the meeting Mr. Oakley reviewed the situation resulting from the aid given the Washington company and stated that the meeting had been called to save the company. Mr. Fennimore is said to have stated "that the Sudden Lumber Co. was going to take care of their obligation as stated in his letter of September 4"; that he worked out the exact amount of appellant's obligation as $23,000 and interest; that it was decided that the Washington company could not be dissolved until its debts were paid, and that that matter was left to the future as conditions might allow. Fennimore then asked to be taken to the National Bank of Tacoma as his company desired, if possible, to negotiate a loan there. The bank, however, declined. Mr. Kellogg testified that he and the other respondents had refrained from enforcing their demand against the Washington company, and that up to that moment they had not done so and that it was arranged and understood that appellant might make periodic payments of its proportionate share. Another witness testified that Mr. Fennimore with the knowledge that the Washington company could not then be dissolved, expressed satisfaction and promised that his company would pay nevertheless. Mr. Sullivan testified that Mr. Fennimore submitted a figure as to the amount his company should pay immediately on account and asked if it would be satisfactory. Upon being told that it would he said he would send a check in that amount. Two weeks after the meeting appellant mailed its check to respondents for $3,847.80 with remittance advising "Payment re preferred stock of Umpqua Mills & Timber Co., Oregon, as agreed at meeting of November 8th, 1929", the check and letter accompanying it dated November 22, 1929. The letter is in part: "Enclosed find check as agreed at the meeting of November 8, 1929" and the amount of the check corresponds with the amount in the "To Pay" column after the name "Sudden" in the work sheet received in evidence made by Fennimore at the meeting. April 10, 1930, respondents wired appellant asking payment as per agreement. April 11, 1930, appellant wrote respondents which letter is

signed "Sudden Lumber Company, H. W. Fennimore". "Dear Mr. Oakley: In accordance with our wire of yesterday, we are enclosing herewith our check for $3869.25. This is made up as follows: Interest at 6% on $23,000.00, June 16, 1928 to Nov. 8, 1929, $1935.78, less preferred dividend applied $690.00, $1245.78". The letter then contains detail of the calculation and "balance of principal owing by us $16,700.00 plus interest from Dec. 31, 1929". Fennimore advises that the calculations which he encloses are slightly different than those shown by his letter of November 22, 1929, and that the enclosed calculation "is the basis on which we set up the account on our books as to December 31, 1929". He regrets a delay "but the writer has been away considerably since the first of the year and is the only one who is familiar with the matter". The enclosed check was received in evidence.

Sudden Lumber Company's 1929 journal was put in evidence, from which it appears that the debt of $23,000 to "Tacoma group represented by F. D. Oakley" is set up as an absolute liability. Sudden Lumber Company's balance sheets and profit and loss statements prepared by Price-Waterhouse and assuming to reflect a true and correct statement of the assets and liabilities of Sudden Lumber Company were received in evidence showing liability and account payable by Sudden Lumber Company $20,569.25, which is $23,000 less the November payment for the year 1929, the 1930 sheet carrying a balance of the account ending that year $16,700. These are carried as liabilities payable with interest.

■ Where it is manifest that persons have endeavored to contract one with the other courts are constrained to find in favor of the success rather than of the failure of their efforts where evidence is present warranting such inference. As said in *Meyers* v. *Nolan, ante,* p. 319 [63 Pac. (2d) 1216]: "The law does not favor the destruction of contracts because of uncertainty but will, if feasible, so construe contracts as to carry into execution the reasonable intentions of the parties if they can be ascertained."

■ From the evidence in this case the conclusion is irresistible that Sudden Lumber Company entered into a contract with respondents as pleaded and as found by the court. The finding may not now be disturbed notwithstanding the fact that when Fennimore was called by plaintiff as a witness

his memory was very vague. However, the court believed the testimony of other witnesses and had before it Fennimore's letters, the books of account and audits of the company and the fact of payments on account. From the foregoing it must be concluded that there was a contract, and that Fennimore had authority to act for the Sudden Lumber Company, excerpts from whose books have been given. The evidence also supports the finding that the respondents agreed to refrain from enforcing their claim against the Washington company and from selling or liquidating its assets. Not only may such inference be drawn from the testimony, but the fact that they forbore is evidence of an agreement to forbear. 13 Corpus Juris, page 348, section 200: "An actual forbearance is evidence of an agreement to forbear."

Such is the reasonable implication of the evidence. It may be pointed out that the court was at liberty to disregard any oral testimony given by Fennimore no matter by whom he was called.

■ Respondents' cause is not within or barred by the statute of frauds. The promise here is an independent promise by the Sudden Lumber Company not to answer for the default of another, but to pay to the respondents the sum of $23,000 as its proportion of an obligation, and it was supported by a valid consideration. There is no evidence that it agreed to pay any money to the Washington company to be applied by that company or upon any debt of that company to the respondents. Respondents were about to foreclose an obligation of the Washington company and take over its assets which would have obliterated the investment of the Sudden Lumber Company therein and the evidence establishes the fact that in consideration of the respondents' forbearance appellant agreed to pay them the $23,000.

Section 2794 of the Civil Code: "A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing: 3. . . . or upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person." In any phase the contention of appellant is not available to it. It was peculiarly beneficially affected and memoranda signed by the party to be charged were received in evidence; in this

connection, the following exhibits are referred to: Plaintiffs' 33, 34, 10, 11, 12, 13, 15, 17, 18, 19, 20, 24, 25, 26, 27.

■ The claim is not barred by the statute of limitations. (Sec. 339, subd. 1, Code Civ. Proc.) The contract was in a sense oral but evidenced by writings. The $23,000 was payable on demand. The statute in the abstract then being two years, but the parties contemplated periodic payments as the Sudden Lumber Company might be able to pay. "A contract may contemplate an indefinite delay for the repayment of money due on demand, in which case, the statute does not run until actual demand or the happening of the event designated in the contract as the extreme limit of payment." (16 Cal. Jur. 511.)

It was agreed that appellant was to make ninety-day progress payments. In his letter of January 20, 1930, Mr. Fennimore having been asked by Mr. Oakley for his next payment on February 1st says: "This is pretty much of a surprise as we had calculated on our next installment being due about February 22d, three months from the date of our last check," and it was understood that appellant was not in a position to pay cash and that hence progress payments had been determined upon. Appellant's last payment was April 11, 1930. Further demand for the entire amount was not made until June 11, 1931. Less than a year thereafter, April 1, 1932, by agreement the statute was tolled. April 11, 1930, a letter of appellant is an acknowledgment of the obligation. It is a distinct and unqualified admission of the debt, an unqualified promise to pay it, and states the balance due.

■ It is true that where suit is grounded upon a specialty and there is no element of uncertainty, or where there has been no previous transaction between the parties creating a debtor-creditor relationship recourse may not be had to an account stated. In the first instance an account stated cannot supersede or supplant the specialty, and in the second, the account stated may not of itself create a liability. However, neither of these inhibitions seems to be present in the instant case, but rather there is an analogy to the situation illustrated by *Merchants' Nat. Bank* v. *Carmichael*, 178 Cal. 446 [173 Pac. 999, 1000], where the court says of the writing there found to be an account stated: "It does not itself create the original obligation, as claimed by respondent (here as claimed

by appellant) ; it refers to the first agreement as the founda-
tion thereof. The authorities cited by respondent (here ap-
pellant) to the effect that 'an account stated cannot be made
to create a liability when none existed before' are, therefore,
not in point.''

In aid of lucidity the letter wherein the foundation for
the finding of an account stated is embraced is set out in full:
''Dear Mr. Oakley:

''In accordance with our wire of yesterday, we are enclos-
ing herewith our check for $3869.25. This is made up as
follows:

Interest at 6% on $23,000.00

| | | |
|---|---:|---:|
| June 16/28 to Nov. 8/29........... | | $1,935.78 |
| Less preferred dividend applied..... | | 690.00 |
| | | $1,245.78 |
| Our Voucher Nov/29: | | |
| Int. proportion of $924.00 billed by | | |
| Bank as then due June 29/Nov8/29, | | |
| 134 Days at 6%................$ | 506.63 | 506.63 |
| Principal ....................... | 3,341.17 | |
| Total our check.................$ | 3,847.80 | |
| | | $ 739.15 |
| Principal ......................$23,000.00 | | |
| Less payment above............... | 3,341.17 | |
| | $19,658.83 | |
| Interest Nov.9/29 to Dec. 31/29 on.. | 19,658.83 | 171.27 |
| Interest due to Dec. 31/29.......... | | 910.42 |
| Principal balance................. | 19,658.83 | |
| On a/c in this check............... | 2,958.83 | 2,958.83 |
| Check herewith................... | | $3,869.25 |

''Balance of principal owing by us,
$16,700.00
''Plus interest from Dec. 31/29

"The above calculation is a little different from that shown in our letter of November 22nd, 1929, and is the basis on which we set up the account on our books as to December 31st, 1929.

"You will recall that the figure of $3,857.80 was the amount arrived at in your office in Tacoma as being our proportion of the $5,924.00 then required by the bank. In the above calculation we have figured our proportion of the interest $924.00 and considered the balance as a principal payment. Then we have computed the interest to December 31st, 1929 and have added an amount of principal to bring the balance due into round figures. This makes the present check slightly different in amount from the last, but if on checking the figures you find them correct in principle, it will simplify our bookkeeping.

"We regret having delayed this matter so long, but the writer has been away considerably since the first of the year and is the only one who is familiar with the matter.

"Yours very truly,
"SUDDEN LUMBER COMPANY,
"H. W. FENNIMORE.

"HWF:T
"enc-1"

From the same it appears that the exact balances of that day had been a matter of some doubt, and that Sudden Lumber Company, through its Mr. Fennimore, who is himself a certified public accountant, desired that doubt be set at rest.

Upon the subject of the authority of Fennimore to bind appellant corporation, it is suggested that he had gone to Tacoma armed merely with a proxy. This is not correct. It is true that since necessity for voting stock at the Tacoma meeting might arise he was obliged to carry a proxy, which instrument, however, was not any limitation upon his power as a representative of the corporation, because the corporation sent him there to "do the needful".

The substitution as a party of the representative of a predeceased plaintiff was not erroneous. The action was properly commenced upon behalf of at least three plaintiffs, and since all persons with whom appellant had assumed to contract should join in an action to recover upon the obligation (6 Cal. Jur. 477, sec. 283; 20 Cal. Jur. 504, sec. 17) the complaint exhibited a defect in the nonjoinder of a proper

plaintiff. The defendant, however, did not either demur or answer upon that ground (sec. 434, Code Civ. Proc.) and certainly the court acted within its jurisdiction when it permitted the substitution of a proper party. In any aspect it cannot be said that harm came to the defendant appellant by having all parties concerned before the court.

The trial court did not fail to find upon a material issue, omitting to find that Sudden Lumber Company had subscribed to a memorandum evidencing the amount of its obligation. The court did find that on November 8, 1929, defendant entered into an agreement with Oakley et al., under the terms of which defendant agreed to pay on demand to said four persons above named the sum of $23,000 with interest at the rate of 6 per cent from the 16th day of June, 1928. This necessarily implies as is disclosed by the evidence that memoranda were signed by the appellant, and in view of the evidence in this case and of the finding above referred to the omission to find that there was a subscribed memorandum cannot be said to materially effect the interest of the appellant, and it would not change the judgment. Had the court made a finding it would have been adverse to appellant so that it is not in a position to complain.

It does not appear that the court erred in allowing a motion to amend pleadings to conform to proof, because the contract pleaded and that proved are in substantial accord. No substantial error in the rulings of the court is pointed out.

From the foregoing considerations the judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 25, 1937.