JAMES THEODORE GREEN *vs.* DAVID S. GREEN, administrator.

Suffolk.    April 7, 1937. — June 29, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Contract,* Parties, In behalf of child. *Agency,* What constitutes.

A child could recover in his own name upon a promise made by his paternal grandfather to his mother, with whom he was living, separated from his father, that the grandfather would set up a trust fund for the child if the mother and child would come to live in his home with him and the child's father, upon it being found that the promise ran to the mother as the child's agent and not in her personal capacity, and that there was performance by the child and the mother.

CONTRACT. Writ in the Superior Court dated November 19, 1935.

The action was tried before *Morton,* J., who ordered a verdict for the defendant. The plaintiff alleged exceptions.

*H. Richter,* for the plaintiff.

*E. R. Bonitz,* for the defendant.

QUA, J.   The plaintiff is the minor son of David S. Green and his wife Vivian G. Green. Samuel Green, the defendant's intestate, was the father of David S. Green and the grandfather of the plaintiff. The following findings could have been made: The plaintiff was born in 1929, and about that time his father and mother separated, and the mother took the infant plaintiff to live with her family. In 1931, Samuel Green began to manifest a great interest in and fondness for the plaintiff. He initiated efforts to bring about a reconciliation between the plaintiff's father and mother and to have them live together again with the plaintiff at his home. He said he would set aside a trust fund of $25,000 for the plaintiff. Early in 1933, an understanding was

reached.   The plaintiff's mother gave up her employment, and the plaintiff, who was then between three and four years of age, and his father and mother lived with Samuel Green for about two months.   At the end of that time the plaintiff's father sent his mother away, and the plaintiff and his mother again lived with his mother's family.   Samuel Green expressed great regret at this, but told the plaintiff's mother that "it was the best thing for her to do."

The evidence upon which the plaintiff must rely to establish any contract upon which he can recover against the estate of Samuel Green is in substance this:   Samuel Green told the plaintiff's mother that he was willing to set aside a trust fund "for the child" of $25,000, if she would be willing to give up her position, where she was then earning $22 a week, and to come and live with himself, his wife and his son and make a home for the plaintiff.   She said that she needed the money which she was earning.   He said she would not be out anything because the trust fund "would be about equivalent to a thousand a year or a little better and she would have a home for the child."   She replied that she would have to hear from her husband, "because if David does not care for me I cannot come over to live with his parents regardless of the amount of money that he [Samuel Green] is going to set up for the child."   She "wasn't going to give up her position until she was positive that he [her husband] was a different person and really cared for her."   Samuel Green repeated that if she would give up her position he would set aside $25,000.

Ever since *Mellen* v. *Whipple*, 1 Gray, 317, and *Exchange Bank of St. Louis* v. *Rice*, 107 Mass. 37, it has been the general rule in this Commonwealth that no action can be maintained by the beneficiary of a contract who is not a party thereto.   Recent instances of the application of this rule are found in *Dahlstrom Metallic Door Co.* v. *Evatt Construction Co.* 256 Mass. 404, 413, *Pike* v. *Anglo-South American Trust Co.* 267 Mass. 130, and *Central Supply Co.* v. *United States Fidelity & Guaranty Co.* 273 Mass. 139, 143. There are several exceptions to the rule.   The real question is whether this case is within one of the exceptions.

In *Mellen* v. *Whipple*, 1 Gray, 317, at page 323, it was said that "Cases where promises have been made to a father or uncle, for the benefit of a child or nephew" are an excepted class. This statement was rested in part upon *Felton* v. *Dickinson*, 10 Mass. 287, wherein it was held that the plaintiff who, when fourteen years of age, had been placed by his father in the defendant's service upon the defendant's promise to support him and to pay him $200 when he came of age, could, upon coming of age, recover the sum named. Although the soundness of the exception in *Mellen* v. *Whipple* and of the decision in *Felton* v. *Dickinson* was questioned in *Exchange Bank of St. Louis* v. *Rice*, 107 Mass. 37, 42, neither has been wholly overruled.

The subject was again examined in *Marston* v. *Bigelow*, 150 Mass. 45, a case in which the plaintiff's intestate, for adequate consideration, had agreed with the defendant's father not to collect a note given by the defendant. There the court, although limiting some of the broad language used in *Felton* v. *Dickinson* as inconsistent with the general rule which had by that time been established by the cases hereinbefore first cited, nevertheless held that the *Felton* case had been decided rightly upon its own peculiar facts upon the grounds that it might be held that the promise was made to the father as the agent of his son acting in his behalf, that the son's labor was the consideration, moving from the son, for the promise, and that the contract was not an independent one in which the son had no part, but that from its nature he was a privy and party to it. In *Marston* v. *Bigelow* the court further said that the *Felton* case did not establish a general rule that a son might sue upon a promise made for his benefit to his father, but that "The nearness of the relationship may be evidence that the promise to the father was made to him acting in behalf of, and as the agent of, the son." The court then distinguished the *Marston* case from the *Felton* case on the ground that in the *Marston* case it appeared definitely by the pleadings and by the offer of proof that the promise was not made to the son and that the consideration did not move from him, so that the son was not privy to the contract.

In *Gardner* v. *Denison*, 217 Mass. 492, the defendant's testator promised the plaintiff's father before the plaintiff was born that if the expected child should be a boy and should be named for the defendant's testator, the latter would place $10,000 in trust for the boy. This court held that because of the interest which a child has in his own name and the consequences which may result from it, the consideration moves in part from him, "although he is not in a position personally to yield an assent to the promise at the time it is made," and that because of the relation of father and child, the importance of the obligations resting upon parents, and the vital consequences to the child, "the inference may be drawn" that the father was acting in the interest of and as the agent for his son. The same result was reached for similar reasons in *Eaton* v. *Libbey*, 165 Mass. 218.

Even though it might be charged that these cases rest in some degree upon a legal fiction, we think that as a matter of authority they show that in substance, though in modified form, the exception set forth in *Mellen* v. *Whipple* is still the law in this Commonwealth to the extent that a child may recover in his own name where a promise is made to a near relative of the child as the child's agent, for the benefit of the child, and upon a consideration which vitally affects the welfare and interests of the child himself, so that the consideration may be said to move in part from the child. The existence of the other circumstances just mentioned is some evidence, though not conclusive, that the promisee in offering the consideration and in accepting the promise was acting in behalf of the child.

It seems to us that this case should have been submitted to the jury. The removal of the plaintiff to the home of his paternal grandfather to be brought up there with his own father was a matter vitally affecting his interests. It could have been found that the trust fund was to be set up as soon as the removal had been accomplished in good faith; that there was no agreement as to how long the new arrangement should continue; that the plaintiff and his mother remained in Samuel Green's home as long as circumstances

permitted; and that Samuel Green himself recognized that the consideration had been performed in full.*  *St. John* v. *St. John,* 223 Mass. 137.

There would seem to be no greater difficulty in ascertaining the terms of the contract, if there was one, and in assessing the damages due the plaintiff for its breach, if the jury should find that the promise ran to the plaintiff's mother as his agent and not in her personal capacity, than existed in *Gardner* v. *Denison,* 217 Mass. 492.

*Exceptions sustained.*