[Civ. No. 17445. Second Dist., Div. Two. Nov. 14, 1950.]

JOHAN RICHARD WALLACE SCHUMM, a Minor, etc.,
Appellant, v. WALLACE BEERY, Deceased; PHIL
BERG et al., Respondents.

Walter N. Anderson, Don R. Holt, Phil H. Jackson, Jack W.
Swink and Warner & Jackson for Appellant.

Loeb & Loeb, Gang, Kopp & Tyre, Herman F. Selvin and
Milton A. Rudin for Respondents.

MOORE, P. J.—The only question here for decision is
whether a filiation proceeding under section 196a of the Civil
Code survives the death of the putative father.

Johan Schumm, an infant, through his guardian *ad litem*,
complained that he is the illegitimate son of Gloria Schumm
and one Wallace Beery and demanded judgment against his
alleged father for $700 per month for permanent support.
Before the proceeding could be tried, Wallace had winged his
way to the world beyond. Thereupon Johan moved the court
to substitute the executors of Mr. Beery's estate as defendants.
Such motion having been denied, the court on its own motion
ordered a dismissal of the action. From such orders the infant
appeals.

Appellant's first contention is that since liability of a father for the support of his legitimate child survives the grave, the support of his illegitimate progeny continues to be a liability of the estate of its deceased parent. In support of such contention appellant cites *Taylor* v. *George,* 34 Cal.2d 552 [212 P.2d 505]; *Estate of Smith,* 200 Cal. 654 [254 P. 567]; *Newman* v. *Burwell,* 216 Cal. 608 [15 P.2d 511]; *Miller* v. *Miller,* 64 Me. 484. Neither the analogue nor the authorities induce acceptance of appellant's proposition. The illegitimate offspring does not have the statutory standing of that of the legitimate. Hence, the analogy ceases at the threshold. The authorities cited are not in point. While it is true that "the trend of legislation governing the rights of persons born illegitimate is to give them the same status as those born legitimate" (*In re Garcia's Estate,* 34 Cal.2d 419, 422 [210 P.2d 841]) no statute is known to exist that actually confers upon an illegitimate child the same rights of inheritance as the law guarantees to a legitimate. The authorities above cited by appellant are not in the least helpful. Legitimate children are provided for in all of them. At the time of the action against the father's estate to obtain an order for the child's support, there was already a valid support decree against the father, obtained pursuant to a divorce judgment, and entered prior to his decease. Upon the theory that such decree was a contract between the parents, recovery against the father's estate was awarded under section 573 of the Probate Code* to the extent determined by the judgment previously obtained by the mother for the benefit of the child in her divorce action. To adopt appellant's theory would give the illegitimate offspring great advantage over the legitimate heir in the race for the inheritance where the legitimate has been disinherited and the illegitimate has not established his descent from the putative father. (*Carlson* v. *Bartels,* 143 Neb. 680 [10 N.W.

---

*"Actions for the recovery of any property, real or personal, or for the possession thereof, or to quiet title thereto, or to enforce a lien thereon, or to determine any adverse claim thereon, and all actions founded upon contracts, or upon any liability for physical injury, death or injury to property, may be maintained by and against executors and administrators in all cases in which the cause of action whether arising before or after death is one which may not abate upon the death of their respective testators or intestates, and all actions by the State of California or any political subdivision thereof founded upon any statutory liability of any person for support, maintenance, aid, care or necessaries furnished to him or to his spouse, relatives or kindred, may be maintained against executors and administrators in all cases in which the same might have been maintained against their respective testators or intestates."

2d 671, 674, 148 A.L.R. 658].) While the legitimate might have been disinherited by the father's will, the illegitimate could upon the mere testimony of the mother, if true, demand a child's portion.

■ Appellant with persuasive phrase urges that a reversal of the judgment would be consonant with liberal thought and judicial trends. The answer is that the laws of succession are fixed by the Legislature and its acts comprehend the state's public policy. ■ In the absence of a statute so providing, the claim of an illegitimate does not survive against the executor of the alleged father. (*Myers* v. *Harrington,* 70 Cal.App. 680 [234 P. 412] ; *McKenzie* v. *Lombard,* 85 Me. 224 [27 A. 110] ; *People* v. *Kemppainen,* 163 Mich. 186 [128 N.W. 183, 30 L.R.A.N.S. 1166] ; *Carlson* v. *Bartels, supra*; 7 Am.Jur. 691, § 100; 10 C.J.S., § 47, p. 150.)

The second contention is that the instant action necessarily survives by virtue of the language of section 573, Probate Code. Appellant argues that since section 196a specifically provides for the enforcement of a parental obligation by requiring the father to give security for providing support, this action is properly construed as one to enforce appellant's lien on decedent's property; also, that he is attempting to enforce the "property right of support" within the terms of the survival statute. In support of such thesis he invokes the broad definition of "property" as declared in *Hunt* v. *Authier,* 28 Cal.2d 288, 296 [169 P.2d 913, 171 A.L.R. 1379].) Such arguments do not take into account the facts that (1) the paternity of decedent had not been established; (2) support for appellant had not been decreed at the time this action was instituted. Thus the suit is not to enforce an existing obligation. Neither is it an action to recover property or to enforce a lien thereon any more than would be a tort action wherein a successful plaintiff seeks to procure a judgment lien. Moreover, in *Hunt* v. *Authier* the word "property" was construed as it is used in section 574 of the Probate Code. No mention is made of section 573. The broad definition laid down by Mr. Justice Shenk was based upon the legislative change of the term "goods and chattels" as used in Civil Code, section 1584, the antecedent of section 574. If the courts should adopt the logic of appellant, then, if after a wife sues for divorce and for support of a child and demands security therefor under section 140 of the Civil Code, and the husband dies before the action is tried, it would survive. Such a conclusion would be unwarranted for the simple reason that divorce actions abate

on the death of either party whereby jurisdiction of the lawsuit to make any further order is terminated. (*Kirschner* v. *Dietrich,* 110 Cal. 502, 505 [42 P. 1064]; *Bevelle* v. *Bank of America,* 80 Cal.App.2d 333, 334 [181 P.2d 730].)

Appellant's attempt to distinguish *Myers* v. *Harrington,* (1925) *supra,* is ineffectual. Its conclusion, its logic and cited authorities warrant affirmance of the judgment here on appeal. ''The proceeding under our Civil Code,'' said the court, ''is a modified form of the bastardy proceedings which were punitive in character and subsisted prior to the creation of the civil remedies. . . . Under the common law, all such proceedings abate upon the death of the putative father. . . . We find nothing in the acts of the legislature of this state which leads us to the conclusion that the common law rule as to the abatement of such proceedings upon the death of the putative father has been changed. It is for the legislature and not the court to modify the harshness of the common law in this particular.'' The subsequent amendment of section 573 of the Probate Code did not affect that holding by including the phrase ''or to enforce a lien thereon.''

Order dismissing the action is affirmed. The appeal from the order denying appellant's motion to substitute the executors of decedent's estate as defendants having been disposed of by the affirmance of the order of dismissal is itself dismissed.

McComb, J., and Wilson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 11, 1951.