[L. A. No. 21830. In Bank. May 11, 1951.]

JOHAN RICHARD WALLACE SCHUMM, a Minor, etc., Appellant, v. PHIL BERG et al., as Executors, etc., Respondents.

Maurice Rose for Appellant.

Loeb & Loeb, Gang, Kopp & Tyre, Keating Coffey, Robert E. Kopp and Milton A. Rudin for Respondents.

CARTER, J.—Plaintiff appeals from a judgment of dismissal entered after defendants' demurrer was sustained without leave to amend in an action against a father's estate on a contract for the support and education of an illegitimate child.

Plaintiff, Johan Richard Wallace Schumm, is a minor born on February 7, 1948; he prosecutes the action by his guardian ad litem, Kay Whyner. Defendants are the executors of the estate of Wallace Beery, deceased. According to the complaint, the following facts appear: Plaintiff is the son of Beery and Gloria Schumm, neither of whom was married. He was conceived as the result of an act of sexual intercourse between Beery and Gloria on May 18, 1947. In August, 1947, Gloria's request of Beery that he marry her to legitimatize the expected child being refused, she demanded that he acknowledge his paternity of the expected child or she would institute proceedings to have him declared the father and for support of the child. Beery believed, and it was a likely result, that such a suit would be damaging to his social and professional standing as a prominent motion picture star. Under these circumstances, in August, 1947, while Gloria was pregnant with the child (and acting as the agent of the child—see discussion later herein), and for his express benefit, she entered into an oral agreement with Beery as follows: "Whereas, said Gloria Schumm conceived a child by said Wallace Beery as the result of an act of sexual intercourse between them in the County of Los Angeles, State of California, on or about May 18, 1947, and is now pregnant with said child; and

"WHEREAS, said Wallace Beery is a man of great wealth with very substantial income and well able to make adequate provision for the support and education of said expected child, suitable to Wallace Beery's circumstances, station in life and standard of living; and

"WHEREAS, said Gloria Schumm is penurious, without property or income and penniless and is unable to make any provision for the support or education of said expected child; and

"WHEREAS, Gloria Schumm is about to marry one, Hans Schumm; and

"WHEREAS, neither of the parties hereto wish to impose upon said Hans Schumm any responsibility for the maintenance and support of the said child of said Wallace Beery; and

"WHEREAS, said Wallace Beery deems it to be to his best interests, social and financial, that no suit be instituted against him in any Court for a public adjudication that he is the father of said expected child and for that reason desires to avoid such paternity suit and the unfavorable publicity such suit might entail.

"Now, THEREFORE, in consideration of the mutual covenants hereof, said Wallace Beery and Gloria Schumm agree as follows:

"(a) The said Gloria Schumm during the remainder of the period of her said pregnancy until the birth of said child shall institute no action or proceeding in any Court to establish judicially the fact that said Wallace Beery is or will be the father of said child.

"(b) Upon the marriage of said Gloria Schumm and Hans Schumm, said expected child if born alive shall be surnamed 'Schumm' and its name if a male shall include said Beery's Christian name 'Wallace,' or if a female, shall include said Beery's nickname 'Wally.'

"(c) Wallace Beery, if said child be born alive, recognizes and acknowledges the claim of Gloria Schumm in behalf of said expected child that he is morally and legally responsible for the support and education of said child in a manner suitable to said Wallace Beery's circumstances, station in life and standard of living from the date of the birth of said child until said child shall become 21 years of age, or until the death of said child, whichever shall occur sooner, and the said Wallace Beery recognizes the claim of Gloria Schumm in behalf of said expected child that he is morally responsible to afford said child a fair start in its adult life, and that

considering the wealth and earning capacity of Wallace Beery the sum of $25,000 would be reasonable for such purpose and should be supplied by Wallace Beery to said child for such start.

"(d) Promptly upon the birth of said child, if born alive, said Wallace Beery shall purchase and acquire and deliver to and for said child two fully paid-up policies of a Life Insurance Company, to-wit: (1) one fully paid-up policy to be applied on account of the support and education of said child, whereby the Life Insurance Company shall have agreed to pay to said child beginning as of the date of his birth until he shall have reached the age of 21 years, or until his death, whichever occurs sooner, the sum of $100 per week; (2) a second fully paid-up policy on the Twenty Year Endowment plan, to afford said child a fair start in its adult life, whereby the Life Insurance Company on said child's twenty-first birthday, if he be then living, shall have agreed to pay to said child the sum of $25,000; the said child to have no interest in the life insurance features, if any, of said policies, which shall be exclusively matters of Wallace Beery's own concern; provided however, that said Wallace Beery in lieu of said first mentioned policy to be applied on account of support and education may promptly on the birth of said child designate a Bank in the City of Los Angeles, State of California as Trustee, and forthwith deposit with such Trustee interest or dividend bearing securities sufficient in amount to yield over and above the Trustee's charges and costs, a minimum net income of $100 per week, with provision in the Trust Agreement that the Trustee, beginning from the date of the birth of said child until the said child reaches the age of 21 years, or until said child's death, whichever occurs sooner, shall pay to said child the sum of $100 per week.

"(e) Said child shall be maintained, supported and educated as befitting a child of a prominent public man of wealth. Recognizing that the child's receipts under one of said policies of $100 per week will be wholly inadequate to accomplish the desired result, even without taking into account illness of the child from time to time during its minority, possible accidents, educational and other extraordinary unforeseen expenses, it is stipulated that nothing hereinbefore stated shall be deemed to be an intention on the part of any of the parties hereto to modify, decrease or compromise the legal and moral obligations of Wallace Beery to his said child to provide it

during its minority with the necessary funds for its maintenance, support and education according to the station in life and standard of living of Wallace Beery.''

Pursuant thereto Gloria married Hans Schumm on August 21, 1947, and on the birth of plaintiff, gave him the name above mentioned including ''Wallace'' and the surname ''Schumm''; no proceeding was instituted until after the birth. Beery refused to comply with any of the provisions of the contract, except he paid nine weekly installments of $25, beginning July 6, 1948. Damages of $104,135 are claimed. Beery died and a claim against his estate was rejected. Another phase of the controversy has been decided on appeal. (*Schumm* v. *Beery,* 100 Cal.App.2d 407 [224 P.2d 54].)

In support of the order sustaining the demurrer defendants assert that it is alleged in the complaint that Gloria ''acting as agent of said expected child [plaintiff] expressly for his benefit'' entered into the contract, that is, the contract was plaintiff's contract made by Gloria as his agent; that, therefore, it is void because ''a minor cannot give a delegation of power.'' (Civ. Code, § 33.) Plaintiff asserts, however, that the contract was not between him and Beery but between Gloria and Beery for the benefit of plaintiff as a third party beneficiary. (There is no dispute that recovery may be had on such a contract, if valid.) The matter turns, therefore, on whether the complaint shows such a contract. It does allege that the contract was made by Gloria ''acting as agent'' for the expected child. That allegation was stricken, but the complaint goes on to state that she entered into the contract ''expressly for his benefit.'' It is said in the contract that *Gloria* and Beery ''agree'' to the then following terms. *She* agrees not to institute a paternity suit during pregnancy, hardly something the child could agree that she would not do. The whole tenor of the contract points to its being between Gloria and Beery for plaintiff's and Gloria's benefit. There are no obligations assumed by plaintiff in the contract. Moreover, it might be mentioned that under some authorities the *theory* of liability under a contract in favor of a third party beneficiary, that the contracting party-promisee was the agent for the beneficiary, is purely a fiction. (Corbin on Contracts, § 794.) The allegations indicating agency may well refer to a fictional agency. The creditor's claim that was filed against Beery's estate states that Gloria and Beery entered into the contract.

■ Defendants assert that under section 196a of the Civil Code, a mother of an illegitimate child has no action against the father for its support, but only an action in a representative capacity on behalf of the child, and that in agreeing not to institute a suit, plaintiff's right was bargained away, and therefore, plaintiff must be the contracting party, and Gloria acted solely in a representative capacity. There may be some logic in the argument, but it may also be said that she is not promising away plaintiff's right, as possibly she could not do; she is agreeing that *she* will not take steps to enforce it, and that only before the birth of the child.

■ Defendants point to allegations that before the contract, Gloria told Beery she was going to institute suit in behalf of plaintiff. We see little significance in that. It does not necessarily show that therefore she contracted as plaintiff's agent. ■ Reference is also made to an allegation that plaintiff and Gloria performed all the terms of the contract to be by them performed. But it is also alleged that Gloria alone did that. At most it is a stating of different theories. ■ If a complaint is sustainable on any theory it is not vulnerable to a general demurrer. (*Lord* v. *Garland,* 27 Cal.2d 840 [168 P.2d 5].)

■ Defendants contend that the contract constituted a compromise of a minor's claim which has not been approved by the court pursuant to section 1431 of the Probate Code and is therefore invalid. This is predicated on the assertion that the consideration for Beery's promises was a promise that no action would be brought for the child's support which is a compromise of the plaintiff's right to support. The contract does not purport to be a compromise of plaintiff's right to support. It will be remembered that the last sentence in the contract states that plaintiff's right to support is not abrogated or compromised by the contract. It is true that that clause was added to the contract by the amended complaint, but that does not require that it be ignored as it is not contrary to the original complaint. It is merely an additional term added to a contract alleged in the original complaint. Therefore, it is not within the alleged rule urged by plaintiff that facts once alleged cannot be withdrawn for consideration by filing an amended complaint. ■ As we have seen before, Gloria agreed only not to institute proceedings before the birth of plaintiff. After the birth she was free to commence proceedings. That was not a waiver of any

of *plaintiff's rights* before birth. It was only that *she* would not prosecute them.

Defendants contend that for various reasons there was no consideration for the contract. It is asserted that inasmuch as plaintiff was not bound by the contract because it was not approved under section 1431 of the Probate Code, Beery was not bound because there was no mutuality of obligation. That argument is predicated upon the assumption that the contract was between plaintiff and Beery, which, as pointed out, is not the case. Plaintiff is the third party beneficiary of the contract and there is no performance required of him.

Defendants assert that Gloria's promise not to institute suit and to name plaintiff after Beery is not consideration. We cannot agree with either assertion.

On the first proposition, the argument runs to the effect that it is the illegitimate *child's* right under section 196a of the Civil Code to enforce the obligation of the father to support it; that the mother has no right except to bring the action in a representative capacity on the child's behalf; that, therefore, in agreeing not to sue she has suffered no detriment, for having no right, she gave up nothing; that a forbearance to sue on a void claim is not good consideration. Before dealing with that contention we note defendants' claim that there was no promise not to institute proceedings, for the promise does not say no action of any kind will be instituted by a guardian or otherwise. The promise (quoted *supra*) is plain enough. It clearly contemplates that Gloria will not directly or indirectly cause litigation to be instituted involving the question of Beery being the father of the child before the child is born.

The mother does have a definite interest in maintaining the action, for under section 196a the obligation to support is imposed upon both the mother and father. If the mother does not bring an action against the father and he refuses to give support, she will have to bear it. To the extent that she obtains relief against the father in such an action she is relieved of that burden. In agreeing to refrain from suing she is thereby suffering a detriment. It is not a case, therefore, where a person has no right of action and thus could not be benefited by a forbearance to prosecute an action. Gloria had the legal right to bring an action after conception and before birth. (*Davis* v. *Stroud,* 52 Cal. App.2d 308 [126 P.2d 409] ; *Kyne* v. *Kyne,* 38 Cal.App.2d 122 [100 P.2d 806].

Gloria's promise to name plaintiff after Beery (given name Wallace) was adequate consideration to support the contract. It was a detriment to Gloria and a benefit to Beery. The privilege of naming a child is valid consideration for a promise. (*Eaton* v. *Libbey*, 165 Mass. 218 [42 N.E. 1127, 52 Am.St.Rep. 511] ; *Daily* v. *Minnick*, 117 Iowa 563 [91 N.W. 913, 60 L.R.A. 840] ; *Gardner* v. *Denison*, 217 Mass. 492 [105 N.E. 359, 51 L.R.A.N.S. 1108] ; *Wolford* v. *Powers*, 85 Ind. 294 [44 Am.Rep. 16] ; see *Green* v. *Green*, 298 Mass. 19 [9 N.E.2d 413] ; *New Jersey Orth. Hosp. & Dispensary* v. *Wright*, 95 N.J. 462 [113 A. 144] ; *Freeman* v. *Morris*, 131 Wis. 216 [109 N.W. 983, 120 Am.St.Rep. 1038, 11 Ann.Cas. 481] ; *Babcock* v. *Chase*, 92 Hun. 264 [36 N.Y.S. 879] ; Corbin on Contracts, § 127; Williston on Contracts (rev. ed.), § 115.) This is in accord with the principle that the law will not enter into an inquiry as to the adequacy of the consideration. (6 Cal.Jur 189; Williston on Contracts (rev.ed.), § 115; Rest., Contracts, § 81.) Defendants attack the foregoing authorities by asserting that they are dicta or based upon an authority not in point or did not give serious consideration to the question of the sufficiency of the "right to name" as consideration. They have cited no authority to the contrary, however, and two eminent authorities on contracts (Corbin and Williston, *supra*) have cited them for that proposition. Reason supports the rule, for having a child bear its father's name is commonly considered a privilege and honor, and Beery assumed it was, for he obtained such a promise running to him. Merely because in the cited cases the promise was to use the putative father's surname does not make them distinguishable. That is merely a matter of degree, and as seen, the validity of consideration does not depend on its value. Defendants refer to recitations in the contract that Beery was prominent and did not want the possible adverse publicity resulting from the instigation of a paternal suit. But that was only for the period prior to birth, and as seen, the promise to name the child after him was in his favor and presumably he considered it valuable.

The contract is not enforceable, say defendants, because the consent of Beery to it was obtained by threats of injury to his character. However, the complaint does not allege that Gloria would injure his character if he did not enter into the contract. It is alleged that prior to the date of the contract "upon the decedent's [Beery] refusal of a

request . . . Gloria . . . had made that the decedent by marrying her legitimatize said expected child, said Gloria Schumm demanded that the decedent, in writing or by deed and act, clearly acknowledge that he is the father of said expected child, and said Gloria . . . then intended and there declared to the decedent her purpose and intention, upon the failure of the decedent to effect such paternal acknowledgment, promptly to institute in behalf of said expected child a suit in this [Superior] Court for a decree adjudging the decedent to be the father of said expected child and requiring decedent to make adequate and proper provision for the maintenance, support and education of said expected child before and after its birth and during its minority.'' She merely said she would commence a suit, a right she clearly had as hereinbefore seen. A sufference by him of unfavorable publicity would only be an incident of the suit.

 Mixed with this contention is the claim that while adequacy of consideration is not important ordinarily, it is, where the contract is unconscionable and shocking. (See *Herbert* v. *Lankershim*, 9 Cal.2d 409 [71 P.2d 220].) We cannot say, however, that the contract falls within such a rule, at least on the present state of the record. It must be assumed (from the allegations of the complaint) that plaintiff is the illegitimate son of Beery; that Beery left an estate of over $2,-000,000; that Gloria is in ''penurious circumstances''; the use of his name and forbearance to bring an action may have great intrinsic value. The obligation assumed by him is one imposed by law. (Civ. Code, § 196a.)

Defendants assert that the contract being oral is unenforceable because of various provisions of the statute of frauds. First, is the provision requiring ''an agreement made upon consideration of marriage'' to be in writing. (Civ. Code, § 1624(3) ; Code Civ. Proc., § 1973(3).) This is predicated on the clause recited in the contract that ''WHEREAS, Gloria is about to marry'' Schumm and neither Gloria nor Beery wish to impose upon him any responsibility for plaintiff's support; that upon such marriage plaintiff's name shall be ''Schumm''; that Gloria and Schumm were married and the child so named. The amended complaint does not necessarily establish that a marriage between Gloria and Schumm was consideration for the contract. The reference in the contract was merely a recital that they were about to marry and that no liability was to be imposed upon Schumm. Plaintiff was to bear Schumm's name but that includes no

promise to marry. It is not alleged, as asserted by defendants, that in performance of the contract Gloria and Schumm were married. Rather it is alleged that Gloria "having married Schumm," on plaintiff's birth, he was named Schumm. It then goes on to say what was done in performance of the contract.

Second, the contract is within the provision requiring a writing for "a special promise to answer for the debt, default, or miscarriage of another, except in the cases provided for in section 2794 of the Civil Code" (Code Civ. Proc., § 1973(2); Civ. Code, § 1624(2)). It is asserted that Beery promised to answer for the obligation of Schumm to support plaintiff. It is reasoned that as Gloria and Schumm were married when plaintiff was born, he was presumed legitimate and Schumm was liable for his support. Assuming the validity of that argument, it is predicated on the assumption that the promise was to plaintiff. The promise was to Gloria and obviously from the terms of the contract it was not to answer for any default of Schumm's, but was an original promise to Gloria. Among other reasons why the statute does not apply is the rule that a promise to answer for the debt of another is deemed an original obligation and not within the statute "Where the promise is upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person." (Civ. Code, § 2794(4).) The rule is stated: "Whenever a promise to answer an antecedent obligation of another is made upon a fresh consideration beneficial to the promisor, no matter from what source it may move, the promise is an original one and valid though oral; or, as was said in an early case, whenever the leading and main object of the promisor is not to become surety or guarantor of another, but to subserve some purpose or interest of his own, his promise is not within the statute, although the effect of the promise may be to pay the debt or discharge the obligation of another." (12 Cal.Jur., 869.) (See *Greenfield* v. *Sudden Lumber Co.*, 18 Cal.App.2d 709 [64 P.2d 1007].) As we have seen, Gloria's promise to name the child after Beery and to refrain from instituting an action was beneficial to Beery. This is in line with the basic principle that: "The important question, running through all cases dealing with the code subdivision just quoted, is whether the promises made are in fact assumptions of another's liability, or the primary obliga-

tion of the promisor himself. In the former case, the promise is within the statute and must be in writing, but in the latter case the promise is valid, though verbal. The precise language used in making the promise is important, as a slight change in phraseology may have the effect of ·changing a promise, intended to be conditional and collateral, into an independent and original undertaking." (12 Cal.Jur. 864.)

▇ Third, the contract must be in writing, state defendants, for it is "by its terms not to be performed during the lifetime of the promisor," (Code Civ. Proc., § 1973(6); Civ. Code, § 1624(6)) and it is a promise by Beery to devise property (Code Civ. Proc., § 1973(6); Civ. Code, § 1624(6)). The only argument advanced to support this argument is that the agreement as a whole shows it was a contract to devise property—the life insurance policies. Obviously, it is not such a contract.

▇ Fourth, it is claimed that the contract is one for the sale of personal property (a chose in action) having a value in excess of $500; thus within the provision that: "A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged, or his agent in that behalf.

"The provisions of this section apply to every such contract or sale, notwithstanding that the goods may be intended to be delivered at some future time or may not at the time of such contract or sale be actually made, procured, or provided, or fit or ready for delivery, or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery; but if the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply." (Code Civ. Proc., § 1973a; Civ. Code, §§ 1624a, 1724.) The reference is to the provision in the contract, *supra*, in connection with Beery's promise to support, that he will purchase and deliver on the child's birth two paid up policies of insurance, one in which the insurer would pay $100 per week to the child during minority and the other under which the child is to receive $25,000 on reaching majority.

It should be quite clear that this was not intended as a sale. Beery was not an insurance company and could not "sell" insurance. He merely agreed to furnish the money necessary to obtain such policies. It is true he promises to deliver them but the main purpose was that he furnish the necessary funds in order that the protection afforded by a reputable insurer be secured. In lieu of the first policy a trust with a bank as trustee may be established. Certainly, if Beery promised to deposit the funds for support in a bank to Gloria's or the child's credit, it would not be considered a sale of a chose in action against the bank. The situation here is not substantially different. (Even if it be assumed that a sale of the insurance policies was intended, it may be that the statute has been satisfied in that "part payment" takes the case out of the statute. Here all of the performance by Gloria has been performed. She has refrained from instituting the action and named plaintiff after Beery.)

Finally, it is asserted that plaintiff is barred from enforcing the contract because he also instituted an action for support under section 196a of the Civil Code. That action was commenced before Beery's death which occurred before it was tried. The action was dismissed on the ground that the action did not survive Beery's death. That judgment of dismissal was affirmed. (*Schumm* v. *Beery, supra,* 100 Cal.App.2d 407.) Defendants' argument is twofold: that by commencing that action plaintiff had made an election of remedies, that is, to enforce his right under section 196a thus abandoning the contract, and that the demurrer was sustainable on the ground that another action was pending.

As to election of remedies, plaintiff asserts that it cannot be raised by demurrer (Code Civ. Proc., § 430). But, assuming it may, the doctrine is not applicable here. The general rule is stated: " 'An election of remedies is defined as the choosing between two or more different and coexisting modes of procedure and relief allowed by law on the same state of facts.' (9 R.C.L., p. 956.) 'Election of remedies has been defined to be the right to choose or the act of choosing between different actions or remedies where plaintiff has suffered one species of wrong from the act complained of. Broadly speaking, an election of remedies is the choice by a plaintiff to an action of one of two or more coexisting remedial rights, where several such rights arise out of the same facts, but the term has been generally limited to a choice by a party

between inconsistent remedial rights, the assertion of one being necessarily repugnant to or a repudiation of the other.' (20 C.J., p. 2.)'' (*Mansfield* v. *Pickwick Stages*, 191 Cal. 129, 130 [215 P. 389].) ▮ The facts are not the same nor are the remedies inconsistent. The instant action is on the contract, which makes precise provision for what shall be paid for the support. The other action was under the statute (Civ. Code, § 196a) which is the general obligation to support. By bringing the action under the statute, plaintiff did not abandon any right under the contract and the contract expressly provides that it is not an abrogation of the right under the statute. ▮ On the claim of another action pending, that action has gone to final judgment—affirmed on appeal. It would not be res judicata (*Cf.*, *Stevens* v. *Kelley*, 57 Cal. App.2d 318 [134 P.2d 56]) for all it determined was that an action under section 196a does not survive the death of the father.

Judgment reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J., Dissenting.—In my view the opinion prepared for the District Court of Appeal by Mr. Presiding Justice Moore (reported at (Cal.App.) 224 P.2d 56) correctly disposes of the questions presented. For the reasons therein stated I would affirm the judgment of the trial court.