[Civ. No. 7112.   Fourth Dist.   July 19, 1963.]

B. B. JACKSON, Plaintiff and Appellant, v. HAPPY SCURR, Defendant and Respondent.

*Assigned by Chairman of Judicial Council.

Erwin P. Werner for Plaintiff and Appellant.

Willis Smith for Defendant and Respondent.

BROWN (Gerald), J.—Plaintiff, cross-defendant and appellant, B. B. Jackson (hereinafter called Jackson), sued to quiet title to certain unpatented mining claims designated as Iron Pot one through thirty-five. Defendant, cross-complainant and respondent, Happy Scurr (hereinafter called Scurr), answered and cross-complained to obtain ownership of an undivided one-half interest in said mining claims, subject only to Jackson's being paid $2,740 out of production from the claims, and upon payment in full Scurr to be entitled to a conveyance and transfer of such interest. From a judgment granting the relief sought by Scurr, Jackson has appealed.

On April 23, 1958, the parties agreed, in writing, for Jackson to convey to Scurr his undivided one-half interest in the mining claims for $4,000, $200 being paid at that time, with the balance of $3,800 to be paid on or before June 1, 1958. Upon payment of the balance Jackson would quitclaim his interest to Scurr.

On June 7, 1958, the parties met at the office of Scurr's attorney; Scurr paid $250 leaving a balance of $3,550 and Jackson agreed to provide documents of ownership and title before the balance was to be paid 60 days later.

On June 21, 1958, Jackson was paid an additional $10. Scurr paid $300 more August 29, 1958, reducing the balance to $3,240; because Jackson failed to produce the promised documents the time for performance was continued to September 30, 1958. However, on September 19, 1958, Jackson, pressed for money, had a garage operator telephone Scurr

and request a payment on the balance due, during which conversation Scurr asked that Jackson accept 10 cents a ton from production to pay the balance and Jackson agreed. Later on the same day Scurr telephoned the garage operator and dictated an agreement which he reduced to writing signed by Jackson as follows:

"September 19, 1958.

"In supplement to agreement made August 30, 1958 between B. B. Jackson and Dr. Happy S*k*urr, wherein B. B. Jackson gave Dr. S*k*urr extension to September 30, 1958 to pay balance due of Three Thousand, two hundred forty dollars ($3,240.00).

"Inasmuch as the Geologist report states there is not over 10,000 ton *or* iron, a running average of 60% with very high Silica and though Geologist recommen*t*s we abandon the Iron Pot claims owned by B. B. Jackson.

"We hereby agree to pay Five hundred dollars, $500.00 with the understanding that *if we show desire* we will pay B.B. Jackson the balance of Two thousand seven hundred and forty dollars ($2,740.00) out of production of said claims. Accepted:

"/s/ B. B. Jackson

"In case we do not complete purchase and go ahead and operate on lease, the Five hundred dollars ($500.00) will be considered as advance royalty.

"/s/ B. B. Jackson." (Italics ours.)

Scurr then paid $500 more on the purchase price leaving a balance of $2,740. Thereafter there was neither production nor further payment although Scurr was willing to pay the balance out of first production.

On July 29, 1959, Scurr sent Jackson a written proposal prepared by her attorney which provided the remaining $2,740 be paid at 10 cents a ton on ore produced, but Jackson refused to sign.

■ Jackson first contends Scurr is unwilling and unable to fulfill the conditions of the agreement, and relies upon testimony elicited from Scurr on cross-examination that it would take her 15 to 30 days to raise the balance due if Jackson furnished the required documents "this very minute." Appellant's position is not well taken for the reason that the agreement no longer required a cash payment of $2,740; instead, on September 19, 1958, when Jackson solicited an additional $500, Scurr in turn obtained Jackson's agreement to allow the balance to be paid "out of production of said

claims." It was irrelevant to the agreement whether Scurr could pay the money into court "In the event we furnish you with these documents this very minute" and the trial court properly sustained an objection to this line of questioning. If there was any failure to perform it appears to have been on the part of Jackson in not providing the proper documents.

Jackson next contends the evidence does not support the finding by the court, ". . . that at the option of cross-complainant, the said balance of $2,740.00 might be paid out of production from said mining claims. . . ." It is Jackson's position that the memorandum of September 19, 1958, which he signed, which provided "if we show desire," means desire by both Scurr and Jackson, i.e., both parties must agree that the balance be paid out of production. The September 19, 1958, memorandum contains the word "we" five times. The first time there is a recommendation that ". . . 'we' abandon the Iron Pot claims owned by B.B. Jackson." Obviously this "we" does not refer to both parties, Jackson and Scurr. The second use of "we" is where Scurr agreed to pay an additional $500. This again can refer only to Scurr. The third and fourth times "we" is used state ". . . if we show desire we will pay B. B. Jackson the balance. . ." Jackson does not contend the second "we" in this statement covers him as well because it would be ridiculous to argue that the second "we" included him as one to pay himself. The fifth use of "we" is in the last sentence, "In case we do not complete purchase. . . ." This, of course, refers to Scurr alone who is the one making the purchase. We believe that the language of the September 19, 1958, memorandum provided substantial evidence upon which the trial court might conclude that "we" in all five instances, and in particular the third instance referred to an editorial "we" of Scurr alone and hence the evidence supports the finding that Scurr had an option to pay the balance out of production.

Jackson's last contention is that the agreement of September 19, 1958, is void for uncertainty in that it leaves essential matters for future agreement. There is nothing, however, in the memorandum of September 19 which calls for the parties to make an agreement at some future time. Scurr was given an option to pay the balance due out of production and Scurr has offered to pay said balance from the first production of the claims. The only conceivable undetermined point in the agreement of September 19, 1958, is the rate of payment out of production. The evidence on that point is

that in the telephone conversation of September 19, 1958, the parties agreed upon the sum of 10 cents a ton from production. From this it is apparent there are no essential features of the agreement which remain uncertain or the subject of future agreement. Further, the law leans against a destruction of contracts because of uncertainty and favors an interpretation which will carry into effect the reasonable intention of the parties if it can be ascertained. (*McIllmoil* v. *Frawley Motor Co.*, 190 Cal. 546 [213 P. 971] ; *Roy* v. *Salisbury*, 21 Cal.2d 176 [130 P.2d 706] ; *Meyers* v. *Nolan*, 18 Cal. App.2d 319 [63 P.2d 1216].) An interpretation which gives effect is preferred to one which makes a contract void. (Civ. Code, § 3541.)

Judgment affirmed.

Griffin, P. J., and Conley, J.*, concurred.

---

*Assigned by Chairman of Judicial Council.