[Civ. No. 29678.    Second Dist., Div. Two.    Feb. 20, 1967.]

SOUTHERN CALIFORNIA THRIFT & LOAN, Plaintiff and Appellant, v. SYLVANIA ELECTRIC PRODUCTS, INC., Defendant and Respondent.

Fulop, Rolston & Burns, Lowell R. Marks, Irwin M. Fulop and Marvin G. Burns for Plaintiff and Appellant.

Gibson, Dunn & Crutcher and Robert S. Warren for Defendant and Respondent.

ROTH, P. J.—Appellant Southern California Thrift & Loan complained in several counts against respondent Sylvania Electric Products, Inc., seeking various sums for breach of contract and fraud. Respondent's demurrer to appellant's third amended complaint was sustained without leave to amend. Judgment of dismissal was entered in favor of respondent.

The first cause of action alleges substantially:

Appellant, by merger, is the successor in interest to Pacific Thrift and Loan Company (Pacific). On October 9, 1961, Pacific entered into a factoring agreement with Pioneer Electronics Corp., a manufacturer and distributor of television (TV) tubes. Pacific agreed to buy from Pioneer accounts receivable representing sales of TV tubes which Pioneer manufactured and sold. On such purchases, Pacific remitted 80 percent of the accounts so purchased to Pioneer, and retained 18½ percent as a "dealer reserve" for protection in case of default by Pioneer or its customers.

On or about December 1, 1961, Pioneer ceased manufacturing tubes and entered into an oral agreement with Pacific and Sylvania. Pioneer agreed it would purchase its requirements of tubes from Sylvania for resale to its customers under the brand name Pioneer; Pacific would buy Pioneer's accounts receivable from these sales; Pacific would remit, as it received them, the receipts from these accounts, less its discount share, to Sylvania, to the extent of Pioneer's obligations to Sylvania. In case of a "dud" (a defective TV tube), Pioneer customers would return the defective tube directly to Sylvania for either replacement or credit to Pioneer's account; Pioneer would then credit its customers and Pacific would make an appropriate adjustment in its account with Pioneer. The detailed method of crediting, replacement, or trade-in allowance to be

granted by Sylvania for returned TV tubes, depending on whether the tubes were manufactured by Pioneer or Sylvania, and whether they were within or without the warranty period, is alleged.

Pacific further alleges that were it not for this three-way oral agreement, it would have ceased doing business with Pioneer, as it had the right to do pursuant to the factoring agreement of October 9th. The complaint does not indicate when Pacific would have stopped factoring Pioneer's accounts. Presumably this would have been on December 1, 1961, when the oral agreement between the three was allegedly made.

On February 13, 1962, Pioneer was in financial difficulties. This was known to all three parties. At this time, Pacific had $47,729.03 in reserves as security on the Pioneer accounts. Sylvania orally requested Pacific on the above date to release $17,939.60 to Pioneer and orally promised Pacific that if it would release said sum, Sylvania would continue to do business with Pioneer for a "reasonable time," and would do nothing which would jeopardize the collectibility of Pioneer accounts assigned to Pacific. "Reasonable time" is alleged to be a period sufficient for Pacific to recoup from new Pioneer sales the sums it had paid out pursuant to Sylvania's request —"approximately 90 days." On February 14, 1962, Pacific released the sum of $17,939.60 to Pioneer on the strength of Sylvania's promise.

It is further alleged that on February 23, 1962, Sylvania made a similar oral request (partially confirmed by telegram) and pursuant thereto, and relying on Sylvania's promise, an additional $17,065 was released to Pioneer; and Pacific continued, between February 23, 1962 and March 6, 1962, to purchase accounts from Pioneer.

On February 27, 1962, Sylvania wrote to Pacific that it "might" cease doing business with Pioneer. Pacific immediately requested Sylvania to honor its oral agreement and Sylvania orally promised (purportedly confirmed by telegram) to continue doing business with Pioneer.

On March 7, 1962, Sylvania ceased doing business with Pioneer completely, both as to new sales and as to replacement of duds. After repeated demands by Pacific (whose accounts would not be paid unless customers' warranties were honored) Sylvania agreed in writing on April 16, 1962, to replace duds manufactured by it in kind, but did not do so. On April 4, 1962, Pioneer filed a petition of bankruptcy. Sylvania, it is

alleged, did not continue to sell to Pioneer; in addition, it did not honor its commitment for replacement of duds, or set off credits for TV tubes returned by Pioneer customers against Pioneer's indebtedness to it.

According to the allegations the net result of the foregoing recital is that Pioneer's customers refused to pay $59,656.93 on accounts purchased by Pacific. Pacific seeks to recover this sum plus the $35,004.60 released under the alleged oral agreements at Sylvania's request as hereinabove set forth.

Appellant's second cause of action restates substantially the facts set forth above, but alleges an implied contract rather than an express oral contract and seeks $94,961.23 damages.

Appellant's third cause of action alleges that the oral agreement to sell TV tubes and replace duds between Sylvania and Pioneer was for the direct benefit of Pacific and seeks recovery of $20,000 plus additional sums under a third party beneficiary theory.

Appellant's fourth cause of action alleges the oral agreement set forth in the first cause of action was between Pacific and Sylvania alone and seeks $94,961.23 damages.

Appellant's fifth cause of action alleges fraud on respondent's part and seeks $35,004.60 general and $250,000 punitive damages.

A third amended verified complaint was filed, obviously tailored to conform to a written opinion which sustained a demurrer to the second amended complaint. The demurrer to the second amended complaint was apparently sustained on the grounds, insofar as they are important to the primary issue presented, that the oral agreement was uncertain in that it did not show how long Sylvania was to continue to do business with Pioneer or what credit limits Sylvania was to extend to Pioneer, and most importantly, *that under any theory of Pacific,* it could not state a cause of action against Sylvania *because Pacific,* by its allegations, *showed it relied upon an oral agreement which in effect guaranteed the credit of Pioneer, whereas the law requires* (Code of Civ. Proc., § 1974) *this type of agreement to be in writing.* A further ground urged is that no breach of agreement has been properly pleaded.

The allegations outlined which we, of course, must accept as facts, present two decisive questions:

1. Does the oral agreement alleged by Pacific contain the necessary terms of an enforceable contract?

2. Is Pacific barred from relief by the provisions of Code of Civil Procedure, section 1974?

The law favors a construction which will effectuate the pleaded or apparent contractual intentions of the parties. In *Roy* v. *Salisbury*, 21 Cal.2d 176 [130 P.2d 706], a contract more vague and vulnerable to legal attack than the one at bench, was held sufficiently certain to warrant relief. The court said at page 184: "It is a fundamental principle as stated in *McIllmoil* v. *Frawley Motor Co.*, 190 Cal. 546, 549 [213 P. 971]:

' " ' The law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained.' " ' [Citations.] Also, adverting to section 1654 of the Civil Code, in cases of uncertainty not removed by the rules stated in sections 1635 to 1653 of that code, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist, and the promisor is presumed to be such party." Various factors, such as business practice or past performance will be sufficient to demonstrate the existence of a contract and give substance to its provisions. (*Wong* v. *Di Grazia*, 60 Cal.2d 525, 539 [35 Cal.Rptr. 241, 386 P.2d 817]; *Bohman* v. *Berg*, 54 Cal.2d 787, 794-795 [8 Cal.Rptr. 441, 356 P.2d 185].)

Analysis indicates that appellant is alleging two severable oral contracts or a series of oral conversations resulting in the amendment of one oral contract by another. The first oral contract is December 1, 1961. This, appellant alleges, was between it, Sylvania and Pioneer for the purchase of TV tubes by Pioneer from Sylvania and the factoring of accounts receivable by and with Pacific generated upon Pioneer's sales. This oral agreement was to continue at the will of the parties.

The second oral agreement is allegedly between Pacific and Sylvania, made as a result of conversations had respectively on or about February 13 and February 23, 1962 (February Agreement). Pacific by these February Agreements released reserve funds to Pioneer in exchange for a promise by Sylvania to continue to deal with Pioneer for a reasonable time on the basis of the December 1 agreement, so as not to impair Pacific's ability to recoup the funds so released.

Pacific urges in essence that the February Agreement

imposed for new consideration, to wit: release of substantial funds, a time period within which the first agreement could not be terminated by Sylvania at will. Whether the February Agreement be construed as modifying the first agreement or as an independent contract, is not significant. What is important however, is that Pacific is alleging a breach by Sylvania of the February Ageement. This breach consisted of ceasing to perform under the agreement of December 1, 1961. There was no breach of the December 1st agreement by Sylvania's cessation of business with Pioneer absent the "time" provision of the February Agreement. Since appellant's allegations as to the February Agreement must be accepted as true, Sylvania's action in terminating its relationship with Pioneer before expiration of the reasonable time — 90-day period alleged—constituted a breach.

Although respondent properly complains that terms of the December 1st agreement are vague and uncertain, we cannot say they are too vague or uncertain to be enforced. (*Wong* v. *Di Grazia, supra*; *McIllmoil* v. *Frawley Motor Co.*, 190 Cal. 546, 549 [213 P. 971]; *Jackson* v. *Scurr*, 218 Cal.App.2d 446, 449-450 [32 Cal.Rptr. 268]; *Parlier Fruit Co.* v. *Fireman's etc. Ins. Co.*, 151 Cal.App.2d 6, 18-19 [311 P.2d 62].) Further, under the allegations, the parties performed the December 1st agreement for approximately two and one-half months. "It is well-settled law that, although an agreement may be indefinite or uncertain in its inception, subsequent performance by the parties under the agreement will cure this defect and render it enforceable." (*Bohman* v. *Berg, supra,* at pp. 794-795; see also *Lunden* v. *County of Los Angeles*, 233 Cal.App.2d 811, 818-819 [43 Cal.Rptr. 849]; 1 Corbin, Contracts, § 101, p. 453 *et seq.*)

Respondent's primary objection is that no time period for performance (i.e., continued dealing by Sylvania with Pioneer) is stated. This omission is met by the allegation in the third amended complaint, which expressly alleges the February Agreement that Sylvania was to continue doing business with Pioneer for "a reasonable time . . . a period which would permit Pacific to recoup said sums paid out by it from business done by Pioneer, a period of approximately ninety (90) days."

Respondent also argues that this promise to continue to do business with Pioneer was "a representation as to the credit of a third person" and therefore falls within section

1974 of the Code of Civil Procedure, which provides: "No evidence is admissible to charge a person upon a representation as to the credit of a third person, unless such representation, or some memorandum thereof, be in writing, and either subscribed by or in the handwriting of the party to be charged."

Appellant answers that various letters and telegrams appended to its complaint provide sufficient memoranda of the February Agreement to satisfy the writing requirement. Reproduction of these writings is not necessary here. They would not satisfy section 1974 were it applicable to this case.

The February Agreement, however, was not a representation as to the credit of a third person. It therefore is not within the statute. The agreement was that Sylvania would continue to deal with Pioneer for a reasonable period, to wit: 90 days, in consideration for Pacific's release of funds to Pioneer. It appears implicit from the pleadings that all the parties knew that Pioneer was in a highly tenuous credit condition. It also is clear that Sylvania sold 45 percent of the output of its Fullerton factory to Pioneer and was interested in keeping Pioneer as a customer. Pacific alleges in its complaint that by releasing approximately $35,000, it jeopardized its security for *past debts* of Pioneer, i.e., for accounts receivable it had already purchased. It further alleges that it would not have released this money without assurances from Sylvania that the latter would continue to do business with Pioneer, as in the past, and not imperil the collectibility of these past debts. It is further alleged that if Sylvania stopped doing business with Pioneer before enough time had elapsed for Pacific to collect these accounts, they would not be collected.

The arithmetic disclosed by the pleadings suggests there may be a question whether the amount withheld by Pacific was in excess of the 18½ percent reserve. However, the factoring contract in paragraph Second (m), thereof provides: "The Assignee may hold for purchase or as security any Accounts, property, securities or moneys of Assignor, which may at any time be assigned to or delivered to or come into possession of the Assignee and at its sole option and discretion may apply the same or the proceeds thereof to the payment of any amounts which at any time then or thereafter

are or might be owing to the Assignee by Assignor. . . ." This is a question of fact which we do not resolve.

In our opinion, Sylvania made no "representation" as to Pioneer's ability to pay within the meaning of Code of Civil Procedure, section 1974; nor did it agree to answer for Pioneer's debts in the event of default. (See Civ. Code, § 1624, subd. 2 requiring a writing in this situation.) Sylvania agreed, according to appellant's complaint, to continue to do business with Pioneer for a reasonable time, to wit: 90 days, and Pacific says its release of $35,000 and its subsequent purchase of accounts was conditioned on this promise.

Whether appellant may ultimately be able to prove any or all of the facts alleged, is not the problem. (*Katenkamp* v. *Union Realty Co.*, 6 Cal.2d 765, 769 [59 P.2d 473].) All that need appear is that if the facts pleaded be true ". . . the plaintiff is entitled to any relief at the hands of the court against the defendants. . . ." (*Matteson* v. *Wagoner*, 147 Cal. 739, 742 [82 P. 436].)

We do not pass upon the soundness of the causes of action, other than the first, because it is clear from the numerous complaints that the facts relied on are all pleaded in the first cause of action. If the facts so alleged cannot be proved, there is no cause of action on any of the theories alleged in the other causes of action.

The judgment is reversed and the trial court directed to order respondent to answer the complaint.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied March 21, 1967, and respondent's petition for a hearing by the Supreme Court was denied April 19, 1967.