[Civ. No. 56825. Second Dist., Div. Five. Mar. 19, 1980.]

SENECA COMMUNICATIONS, INC., Plaintiff and Appellant, v. INTERNATIONAL BANK OF CALIFORNIA et al., Defendants and Respondents.

542

COUNSEL

Rich & Ezer and Mitchel J. Ezer for Plaintiff and Appellant.

Butler, Davidson & Holmes and Mary A. Zachar and Jeffrey L. Davidson for Defendants and Respondents.

OPINION

STEPHENS, J.—This appeal is taken from an order of dismissal entered after International Bank of California's (hereinafter IBC) general

demurrer to Seneca Communications' (hereinafter Seneca) third amended complaint was sustained without leave to amend.

Plaintiff-appellant Seneca instituted these proceedings against defendant-respondent IBC to recover damages in the amount of $19,242 resulting from two separate shipments of merchandise delivered to E.M. Tripp Company (hereinafter Tripp) on open account, for which Seneca has not been paid and cannot collect from Tripp because of the fact that the latter is and was insolvent before the date of initial shipment.[1]

Appellant Seneca is a merchant located in the State of New York, and was there engaged in the assembly and sale of videotape recorder systems and related merchandise. The problem before us began when Tripp, a California corporation at the time, placed an order, in early October 1977, for $9,621 in merchandise from Seneca. Wishing to verify Tripp's ability to pay for the merchandise, before shipping it from the east coast, Seneca requested that the party placing the order, Richard M. Mitman (at the time holding himself out as Tripp's chief engineer), furnish Tripp's banking reference. Mitman thereupon responded that "Tripp banked at IBC, and that Roesch was the Vice-President of IBC in charge of the Tripp account."

Pursuant to the above request, on October 6, 1977, Seneca's "agent called Roesch at IBC and inquired if Tripp maintained an account with IBC." In response, Roesch "advised plaintiff's representatives that Tripp maintained an account at IBC with an average balance in the 'middle five figures'...when in fact Tripp did not have any account whatever at IBC, and Ethel M. Tripp, a Tripp principal, maintained only a personal account with an average balance of about $300.00." Appellant contends that "middle five figures" is a commercial term "intended to mean and understood by [its] representatives to mean that the average account balance was between $40,000.00 and $60,000.00 ...."

Seneca claims that it subsequently delivered the $19,242 worth of merchandise to Tripp on open account "relying entirely on Roesch's statement that Tripp maintained an account at IBC with an average

---

[1]On October 17, 1977, Seneca shipped and delivered to Tripp $9,621 in merchandise on open account, and on December 1, 1977, Seneca shipped and delivered an additional $9,621 in merchandise to Tripp on open account. Seneca alleges that Tripp was "on October 6, 1977 and at all times since...insolvent."

balance in the middle five figures, . . ." Lastly, Seneca alleges in its complaint that at the time it made its inquiry to Roesch, "it was reasonably foreseeable by Roesch that plaintiff would rely on the information supplied in deciding whether or not to extend open account credit to Tripp. . . ."

Upon the basis of the aforementioned, Seneca contends that it has pleaded sufficient facts to allege causes of action against defendant IBC and its vice president, Roesch, for: (1) negligence; (2) negligent "good samaritan"; (3) fraudulent misrepresentation; and (4) fraud by concealment.[2] We disagree.

---

[2]Appellant's first cause of action, for negligence, alleges that (1) at the time appellant's inquiry was communicated to Roesch, "it was reasonably foreseeable by Roesch that plaintiff would rely on the information supplied in deciding whether or not to extend open account credit to Tripp, and that plaintiff would be exposed to an unreasonable risk of harm—namely, nonpayment for merchandise it shipped on open account—if the information provided by IBC about the status and size of the Tripp bank account or accounts at IBC was materially inaccurate"; (2) at that time, "it was Roesch's duty to use such skill, prudence and diligence as other members of the banking profession commonly possess and exercise" and (3) "[i]t was also then Roesch's duty to use ordinary care and skill in his own conduct to avoid endangering plaintiff's property rights. . . ."

The second cause of action, pleading the responsibilities of the "negligent good samaritan," alleges that "[a]t the time plaintiff's inquiry was communicated to Roesch, he was under no duty to speak at all, and could have declined to provide plaintiff with any information about Tripp, but having voluntarily undertaken to [so do] it became Roesch's duty to provide that information in a careful manner."

The third cause of action, misrepresentation, alleges the misrepresentation—that Tripp maintained an account at IBC in the middle five figures; that these "representations. . .were in fact false. . . . [T]hat one Ethel M. Tripp, a Tripp principal, maintained a personal account with an average balance of about $300.00, and that E. M. Tripp Company maintained no account at all. . . . [That] defendants made said representations for their own benefit, either knowing them to be false, or negligently and carelessly and without any basis for believing them to be true."; that respondents' intentions were to induce action on the part of appellant; that appellant was "ignorant of the falsity of defendants' representations and believed them to be true."; that the two shipments to Tripp in open account were induced by and made in reliance upon such misrepresentations; justifiability of the reliance; and, finally, that "[a]s a direct and proximate result of the foregoing, plaintiff was induced to and did sell and deliver $19,242 in merchandise to Tripp on open account, for which plaintiff was not paid by Tripp. . . ."

In appellant's fourth cause of action—fraud by concealment—it alleged that IBC knew or should have known that "Mitman had five prior felony convictions, the two most recent of which were for swindling businessmen out of merchandise," and that Mitman was using Tripp, "a shell corporation without assets or shareholders;. . .as part of an elaborate scheme to obtain merchandise without payment;. . ." that such suppression of information was "made with the intent to induce plaintiff to act in the manner herein alleged in reliance thereon"; and, finally, that "[t]he suppression of the aforesaid facts was likely to mislead plaintiff and did in fact mislead plaintiff in light of the other representations made by defendants concerning Tripp's average account balance."

The standard of review is well established for measuring the validity of a pleading that has not withstood a demurrer. ■ While "[a] demurrer admits all material and issuable facts properly pleaded.... [i]t does not admit contentions, deductions or conclusions of fact or law alleged therein." (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].) ■ It has also been established that "...'plaintiff need only plead facts showing that he may be entitled to some relief [citation].' [Quoting *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 (86 Cal.Rptr. 88, 468 P.2d 216).] Furthermore, we are not concerned with plaintiff's possible inability or difficulty in proving the allegations of the complaint." (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].)

■ In summation, Seneca has alleged material facts which show that Roesch, vice president of IBC, in response to a telephone inquiry asking simply whether a certain depositor maintained an account at IBC, answered in the affirmative, and then further volunteered the information that the average balance of said account was in the "middle five figures." After alleging that neither of these statements was true, Seneca assigns to this oral communication all damages it subsequently incurred by reason of a credit transaction with the supposed depositor in question stating its allegations in two theories, one for fraud and the other for negligent misrepresentation.

We need not reach an independent analysis and review of the elements of the various causes of action which appellant proffers, because we find that the actionability of an oral misrepresentation as to the financial condition or credit of a third person is barred in California by section 1974, Code of Civil Procedure, which, as amended in 1970, states that: "No evidence is admissible to charge a person upon a representation as to the credit of a third person, *unless such representation, or some memorandum thereof be in writing, and either subscribed by or in the handwriting of the party to be charged.* This section is a Statute of Frauds provision and is to be applied in a manner that is consistent with the manner in which subdivision 2 of Section 1624 of the Civil Code is applied."[3] (Italics added.)

---

[3]As enacted in 1872, section 1974 read as follows: "No evidence is admissible to charge a person upon a representation as to the credit of a third person, unless such representation, or some memorandum thereof be in writing, and either subscribed by or in the handwriting of the party to be charged."

In an apparent attempt to avoid application of section 1974, Seneca has pleaded its first cause of action as one for simple negligence. In so doing, appellant, using the identical material facts as used for pleading its cause of action for misrepresentation in count three, has simply deleted the allegation that IBC intended to induce reliance upon its representation. Appellant's first cause of action, based solely upon the alleged misrepresentation as to the credit or financial condition of a third party is in essence, and, upon these facts, indistinguishable from a cause of action for negligent misrepresentation,[4] and, therefore, falls within the prohibitory scope of section 1974.[5]

Appellant cannot escape application of the statute by mere use of the words "breach of duty" when, in fact, the misrepresentation alleged as the breach is the sole evidence of the alleged wrong. As the court stated, in dealing with an analogous statute in *Hunter* v. *Randall* (1873) 62 Me. 423, 426, "[t]he true test whether the cause of action, in whatever form alleged, comes within the statute is, whether the action can be sustained without proof of the representation. If such proof is essential to the action, the statute applies."

1. ■ *Code of Civil Procedure section 1974, as amended in 1970, applies to all third party deceit actions, both those based on negligent and fraudulent oral misrepresentations.*

---

The only amendment prior to that of 1970 occurred in 1965—in connection with the enactment of the Evidence Code. The 1965 amendment substituted the words "No person is liable" for the words "No evidence is admissible to charge a person," at the beginning of the section, and the words "held liable" for "charged," at the end of the section.

Section 1624 of the Civil Code—statute of frauds—reads in pertinent part: "The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent. [¶] . . . . . . . [¶] 2. A special promise to answer for the debt, default, or miscarriage of another; except in the cases provided for in Section 2794; . . ."

[4]The essential elements of a cause of action for negligent misrepresentation incorporate the same elements as that of a cause of action for simple negligence, but contain the additional requirement of alleging that the party making the representation intended that the recipient rely thereon.

[5]It is also of note that in California negligent misrepresentation is, by statutory definition, a form of fraud and deceit. (*Tijsseling* v. *General Acc. etc. Assur. Corp.* (1976) 55 Cal.App.3d 623, 627 [127 Cal.Rptr. 681]; Civ. Code, §§ 1572, subd. 2, 1710, subd. 2; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 481, pp. 2740-2741.)

Appellant notes the traditional reluctance of courts to allow statutes of frauds to be used as a cover for fraud, and argues that the statute herein under consideration is not applicable to fraudulent misrepresentations. The anomaly in this contention is that whereas the traditional statutes of frauds have been concerned with contractual undertakings, section 1974 relates to the commission of a tort, the very gist of which is fraud.[6]

In arguing that section 1974 should not apply to cases of actual fraud, appellant has ignored the judicial analysis and interpretation of this statute as applied in California. Prior to its 1970 amendment the statute was applied to third party deceit actions based on oral representations of credit, without any exceptions. (*Bank of America* v. *Western Constructors, supra,* 110 Cal.App.2d 166; *Cutler* v. *Bowen* (1935) 10 Cal.App.2d 31 [51 P.2d 164]; *Carr* v. *Tatum* (1933) 133 Cal.App. 274 [24 P.2d 195].) The court, in *Carr* held that the statute, "[i]n substance and effect...is a complete bar to an action for damages for false oral representations made with respect to the credit of a third person, regardless of whether [they] were made either in good faith, or with knowledge of their falsity, in order to deceive and defraud the plaintiff;..." (*Id.* at p. 281.)

The 1970 amendment was not intended to change the scope of the statute's prohibition with regard to any narrowing as to the types of misrepresentation covered, but instead to make its application coextensive to that of the suretyship exceptions to the statute of frauds (Civ. Code, § 1624, subd. 2), and to thus mitigate its possible abuses and past harshness. To remove any ambiguity as to the intended effect of the 1970 amendment, it was accompanied by a legislative committee comment which, in pertinent part, stated that "[t]he most significant effect of the second sentence is to make constructions of the general Statute of

---

[6]As the court noted in *Bank of America* v. *Western Constructors* (1952) 110 Cal. App.2d 166, 168 [242 P.2d 365, 32 A.L.R.2d 738]: "The foregoing statute [1974] is patterned in part upon Lord Tenterden's Act (9 Geo. IV, c. 14, § 6) which was enacted in England in 1828 to obviate the decision in *Pasley* v. *Freeman* (1789), 3 T.R. 51, wherein it was held that the existing English statute of frauds did not apply to a deceitful misrepresentation concerning the credit of a third person. The English statute of frauds as amended by Lord Tenterden's Act expressly makes 'misrepresentations as to another person's "character, conduct, credit, ability or trade or dealings,"...not actionable unless made in writing and signed by the party to be charged.' (5 Williston on Contracts (rev. ed., 1937), § 1520A, p. 4257.) Less than a dozen states including California have adopted the enactment in whole or in part. In this state and Idaho the statute by its language is limited to representations as to credit. (Williston on Contracts, *supra.*)"

Frauds [§ 1624] applicable in cases where the representation is made under circumstances where there is an estoppel to assert the Statute of Frauds, where a fiduciary acting in a confidential relationship to his principal and owing him a duty to deal honestly with him nevertheless defrauds him, or where the defendant receives a benefit to himself." (Code Civ. Proc. (1979 pocket supp.) § 1974, p. 9.)[7] Moreover, the changes in the wording of the first sentence of section 1974, made by the 1970 amendment, were to "make clear that the section is a rule of evidence, not a substantive provision." (*Id.*) This enactment is in the same words as the 1872 version of section 1974; that which was before the court in *Carr v. Tatum, supra*, 133 Cal.App. 274. In finding no merit in appellant's contention that section 1974 was not intended to apply to either negligent or actually fraudulent misrepresentations, this court takes careful note of the fact that the recommendation of the California Law Revision Commission—before the Legislature when making its 1970 amendment—traced in great detail the history and harsh effects of section 1974, and urged its repeal. (9 Cal. Law Revision Com. Rep., (1969) pp. 705-733.) In support of its recommendation for repeal, the commission submitted as part of its research study a law review article which also urged the repeal of section 1974 (*id.* at pp. 711-733; see Taylor, *The Statute of Frauds and Misrepresentations as to the Credit of Third Persons: Should California Repeal its Lord Tenterden's Act*? (1969) 16 UCLA L.Rev. 603), and from which appellant has quoted extensively for support of its position taken herein.

If the Legislature, with this bulwark of argument before it urging repeal of section 1974, saw fit instead only to amend it and to clarify the

---

[7]The legislative committee comment by the Senate Judiciary Committee stated in its entirety that: "Section 1974 is amended to make clear that it is a Statute of Frauds provision and is to be applied as such. The amendment revises the first sentence so that it reads the same as it read prior to its amendment in 1965. This will make clear that the section is a rule of evidence not a substantive provision. [Citation.] The second sentence is added to make clear that the section is to be interpreted in a manner consistent with the 'suretyship' clause of the Statute of Frauds which requires a writing to charge a person with a 'special promise to answer for the debt, default, or miscarriage of another.' The most significant effect of the second sentence is to make constructions of the general Statute of Frauds applicable in cases where the representation is made under circumstances where there is an estoppel to assert the Statute of Frauds, where a fiduciary acting in a confidential relationship to his principal and owing him a duty to deal honestly with him nevertheless defrauds him, or where the defendant receives a benefit to himself. See *Monarco v. Lo Greco*, 35 Cal.2d 621,...(1950) (estoppel); *Gerhardt v. Weiss*, 247 Cal.App.2d 114,...(1966) (confidential fiduciary relationship); *Michael Distrib. Co. v. Tobin*, 225 Cal.App.2d 655,...(1964) (benefit to defendant). See Civil Code Section 2794(1), (4), (benefit to defendant). See also *Sunset-Sternau Food Co. v. Bonzi*, 60 Cal.2d 834,...(1964)."

fact that it should be construed as a supplement to the suretyship provisions of the statute of frauds, impliedly subject to the same exceptions, then this court will do no more.[8] For to do so would involve judicial legislation.

2. ■ *A representation otherwise within the statute is not taken out of the statute by the fact that plaintiff's extension of credit to the third person may have resulted in a secondary and incidental benefit to defendant.*

As previously stated, the Legislature, in its 1970 amendment of section 1974, has now made it clear that the section does not apply when the misrepresentation alleged is that of a fiduciary who, acting in a confidential relationship to his principal and owing him a duty to deal honestly with him, nevertheless defrauds his principal, or "where the defendant receives a benefit to himself." (See fn. 7, *ante*, legislative comment, and authority cited therein.)

Despite appellant's contentions to the contrary, we find that neither exception is applicable in the instant case. Appellant alleges that respondents made the representations in question "for their own benefit," that is, that respondents were "induced [to do so] by the desire to continue enjoying Mitman's patronage as an IBC customer,..." It is on the basis of this allegation alone that appellant-Seneca contends that respondents are estopped to raise the bar of section 1974, Code of Civil Procedure, as one who "receive[d] a benefit to himself." The case cited for this exception, by the Senate Judiciary Committee in its comment to the 1970 amendment, is *Michael Distributing Co.* v. *Tobin* (1964) 225 Cal.App.2d 655 [37 Cal.Rptr. 518]. The court in *Michael* held that plaintiff's cause of action, based upon defendant's oral promise to answer for the debt of another, was not barred by section 1624 of the Civil Code—requiring such promise to be in writing—where from the evidence "it reasonably could be concluded that the pecuniary benefit [to the defendant] was the *main object* of his promise."

---

[8]In summarizing its "case against section 1974" the Law Revision Commission specifically noted that the "appellate decisions under Section 1974 are unsatisfactory. Either the results are harsh...or leave great uncertainty. For example, it is impossible to determine whether the section applies to actionable negligent misrepresentations, as well as to those made with 'scienter'." (*Id.* at p. 707.) Yet, even faced with this explicit argument the Legislature did not see fit to narrow the scope of the statute so as to exclude either of these types of misrepresentations.

(*Id.* at p. 666. Italics added.) The court held that where a promisor has a personal, immediate, and pecuniary interest in the transaction in question, the requirement that the promise be in writing does not apply.

This exception to the statute of frauds, concerning a benefit to the defendant himself, upon having promised to answer to the debt of another, has been called the "main purpose" rule,[9] and was specifically approved by the Supreme Court in *Schumm* v. *Berg* (1951) 37 Cal.2d 174, 187 [231 P.2d 39, 21 A.L.R.2d 1051], quoting from 12 Cal.Jur. 869: "'[W]henever the leading and main object of the promisor is not to become surety or guarantor of another, but to subserve some purpose or interest of his own, his promise is not within the statute, although the effect of the promise may be to pay the debt or discharge the obligation of another.'" It was upon this statement of the rule in *Schumm* that *Michael Distributing Co.* v. *Tobin, supra*, 225 Cal.App.2d 655, relied.

Appellant would have this court hold that an indirect or secondary benefit to defendant should also invoke the "benefit" exception to the statute of frauds. However, the legislative comment made pursuant to the 1970 amendment clearly indicates that this unprecedented interpretation is uncalled for. Only if defendant made the representations in question for the primary purpose of advancing his own pecuniary or business interest should the exception apply, and not simply because he derived an incidental or secondary benefit therefrom.

3.  *We find no merit in appellant's contention
    that the representation involved herein
    is outside the bar of section 1974.*

In a final attempt to avoid the bar of section 1974, appellant contends that the alleged representation made by IBC—"Tripp has an account with us in the middle five figures"—is not a "representation as to the credit of a third person." Instead, citing *Southern Cal. Thrift & Loan* v. *Sylvania Elec. Products, Inc.* (1967) 248 Cal.App.2d 642 [56 Cal.Rptr. 706], appellant contends that it was a "factual representation as to the existence of a particular item of personal property [a bank account]," and therefore is outside the bar of section 1974. Appellant, however, has misconstrued the court's holding in *Southern Cal. Thrift*

---

[9] For a discussion of the "main purpose" or "leading object" rule, see Simpson, *A Suggested Test for Application of the Main Purpose Rule Under the Statute of Frauds* (1948) 36 Cal.L.Rev. 405; 1 Witkin, Summary of California Law (8th ed. 1973) Contracts, section 226, pages 199-200.

*& Loan, supra,* in that the court found defendant had not made a representation at all, but instead had directly promised plaintiff that it would continue to do business with the third person for a reasonable period of time. Therefore, liability in that case was predicated upon a direct promise, and thus the court found section 1974 to be wholly inapplicable. (*Id.* at pp. 647-649.)

In its complaint, Seneca alleged both that in making the representation in question it was IBC's "intention to induce action on the part of appellant," and that Seneca was in fact "induced to and did sell and deliver" its merchandise to Tripp as a result of the aforesaid representation, thereby suffering its losses.

■ Two tests have been applied in California to determine whether a misrepresentation is within the statute, under both of which appellant's contention lacks merit. The court, in *Baron v. Lange* (1949) 92 Cal.App.2d 718 [207 P.2d 611], stated that "[i]n determining whether a representation is within the operation of...section 1974, the intent and purpose which prompted the making of a particular representation is material." (*Id.* at p. 721.) Of greater import, however, is *Bank of America v. Western Constructors* (1952) 110 Cal.App.2d 166, 169 [242 P.2d 365, 32 A.L.R.2d 738], wherein the court held that "[a] test, if not the sole test, for determining whether a misrepresentation is within [section 1974], is whether the representation induced the recipient thereof to enter into a transaction which resulted in a debt due to him from a third person." Applying either of these tests to the facts before us clearly establishes that the misrepresentation made by IBC is one "as to the credit of a third person," and, therefore, within the prohibitory scope of section 1974. Seneca makes an untenable contention when it asserts on the one hand that IBC's representation induced it to enter into the transaction, but on the other hand that the representation had nothing to do with Tripp's ability to pay.

The order of dismissal is affirmed.

Kaus, P. J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 14, 1980.