972 F.2d 1348
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
WESTWIND SEAFOOD INTERNATIONAL, INC., Plaintiff-Appellant,
v.
ANCHOR FROZEN FOODS, Defendant
and
The Carlson Company, Defendant-Appellee.
 No. 90-56087.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1991.
Decided July 24, 1992.
 
 Before FLETCHER, D.W. NELSON and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Westwind Seafood International (Westwind), a seafood sales company, brought an action against The Carlson Company (Carlson), an accounting agency, for fraudulent and negligent misrepresentation of the financial capacity of Anchor Frozen Foods, Inc. (Anchor), a mutual client. The district court granted summary judgment for Carlson based on the statute of frauds, rejecting Westwind's claim that the "main purpose rule" barred the application of the statute of frauds. We affirm.
 
 FACTS AND PROCEEDINGS BELOW:
 
 3
 Appellant Westwind had a two-year relationship of selling seafood products to Anchor. In May, 1989, Anchor placed an order with Westwind that substantially exceeded the usual amount purchased by Anchor. Because of the size of the order, Westwind made a credit check of Anchor. Westwind contacted three of Anchor's credit references; all advised Westwind that Anchor was paying its bills. Two of Westwind's employees also telephoned Carlson and spoke to the managing partner of Carlson, Gayle Smith, regarding Anchor's credit and financial status. Carlson had been in charge of setting up Anchor's cash projection schedules to alleviate Anchor's cash flow and cash management problems since late 1988. Westwind alleges that Smith represented in two, ten minute telephone conversations that she was aware of Anchor's financial condition, that Anchor was a strong company, and that Anchor could pay for the seafood order by the contemplated due date.
 
 
 4
 Thereafter, Westwind and Anchor entered into a written contract for the order. Westwind delivered the seafood, but Anchor did not make payment on the scheduled date. Westwind filed a complaint against Anchor. The day following Anchor's bankruptcy filing, Westwind filed an amended complaint against Carlson for intentional fraud and negligent misrepresentation.
 
 
 5
 Discovery proceeded. The trial date was set for January 3, 1991, and the discovery cut-off date for October 31, 1990. On June 8, 1990, Carlson filed a Motion for Summary Judgment based on the California statute of frauds, section 1974 of the California Code of Civil Procedure.[1] Westwind filed a Memorandum and a Declaration in Opposition to Motion for Summary Judgment in which it asserted that the main purpose rule barred the application of the statute of frauds and requested a continuance to permit it to make further discovery. On August 3, 1990, the deposition of Smith, previously initiated but not completed, was taken. On August 6, 1990, the district court heard and granted the Motion for Summary Judgment and denied the request for a continuance.
 
 DISCUSSION:
 I. STANDARD OF REVIEW
 
 6
 A district court's denial of an application made pursuant to Federal Rule of Civil Procedure 56(f) to continue a ruling on a summary judgment motion to permit discovery is reviewed for abuse of discretion. Stitt v. Williams, 919 F.2d 516, 521 (9th Cir.1990); Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416-17 (9th Cir.1987). A grant of summary judgment is reviewed de novo. Stitt, 919 F.2d at 520.
 
 II. DENIAL OF REQUEST FOR CONTINUANCE
 
 7
 Rule 56(f) of the Federal Rules of Civil Procedure permits, but does not mandate, discovery before the granting of summary judgment.[2] The district court should grant a continuance to permit discovery if it appears from the affidavits filed that the party opposing the summary judgment motion could not, for reasons stated, present facts essential to justify opposition. Fed.R.Civ.P. 56(f). The burden is on the party seeking to continue the summary judgment motion to state facts sufficient to show that the evidence sought exists. Volk, 816 F.2d at 1416. Mere allegations of fraud or misrepresentation are not sufficient. See Volk, 816 F.2d at 1416; see also Visa Int'l Serv. v. Bankcard Holders of Am., 784 F.2d 1472, 1475 (9th Cir.1986) (discovery denied where it is clear that the evidence sought appears nonexistent or the object of speculation).
 
 
 8
 Westwind sought a continuance to follow through on the deposition of Smith, specifically to discover two items that it argues would satisfy the statute of frauds or main purpose rule: one, daily basis reports Carlson received from a credit corporation that provided Anchor with a line of credit based on a percentage of Anchor's actual, qualified receivables; and two, Carlson's billing and accounts receivables records and records of payments received from Anchor.
 
 
 9
 The district court denied the request for a continuance, stating:
 
 
 10
 The important thing to, I think, note is that this matter has been pending for some period of time, and no meaningful discovery was taken by plaintiff, during that considerable period of time. Any delay in deposing the Carlson Company people ... really is the fault of Westwind, not through anything the Carlson Company has done.
 
 
 11
 We agree. A Rule 56(f) motion is not justified if the party seeking further discovery has been dilatory in conducting discovery. See Landmark Dev. Corp. v. Chambers Corp., 752 F.2d 369, 372-73 (9th Cir.1985). Westwind had ample time to develop evidence--almost nine months from the filing of its first complaint. See e.g., Stitt, 919 F.2d at 526 (one month adequate time to conduct and review depositions).
 
 
 12
 Westwind argues that its initial decision to postpone the deposition of Smith and subsequent failure to recommence the deposition until the eve of the summary judgment proceedings were due to the illness of one of its counsel and to conflicting trial schedules. When the Smith deposition finally was taken, however, it was by a different counsel. Furthermore, Westwind knew the date of the summary judgment hearing at the time it reset the date for the Smith deposition; at no time did Westwind seek to move the date of the deposition forward, essentially gambling on the success of its opposition to the summary judgment motion.
 
 
 13
 Westwind also argues that its failure to discover the requested documents was due to Carlson's delay of discovery. This argument has little merit. Carlson asserts that it produced all relevant requested documents and points out that Westwind had an opportunity to review documents produced by Carlson at the initial deposition of Smith and chose not to. Further, Westwind never requested an order to compel additional responses. See Redmond v. Burlington N.R.R. Co. Pension Plan, 821 F.2d 461, 469 (8th Cir.1987) (failure to request an order to compel discovery factored into denial of continuance).
 
 
 14
 Westwind finally contends that judicial bias influenced the denial of the continuance and that "the court virtually promised a summary judgment [to defendants]." Westwind cites two passages from the status conference in support of its contention. The judge, to Westwind counsel: "You know, I used to defend the accountants of malpractice and fraud. That was my specialty before I came to the bench. So, I am telling you right now, there is going to be a real serious question as to reliance--and whether or not you can in fact go after the accountants, in this particular situation." The judge, to Carlson: "[Y]ou may want to look at some of the case law, dealing with the extension to accountants. You'll find out that I'm the attorney on I would say at least four of them, that are the controlling cases in the state of California."
 
 
 15
 These statements made by the district court, although inelegant articulations, were made to point out the status of the law with regard to the liability of accountants and do not demonstrate bias or denial of a right to a fair trial. See United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989) (a trial judge has broad discretion in supervising trials and his or her ruling will not be overturned absent abuse of discretion); Southern Pac. Communications v. A.T. & T., 740 F.2d 980, 990 & 990 n. 9 (D.C.Cir.1984), cert. denied, 470 U.S. 1005 (1985) (the mere fact that a judge holds views on the law or policy relevant to the decision of the case does not amount to a denial of the right to a fair trial).
 
 
 16
 We hold that the district court did not abuse its discretion in denying a continuance.
 
 III. GRANT OF SUMMARY JUDGMENT
 
 17
 This court must determine whether, viewing the evidence in the light most favorable to Westwind, there are any genuine issues of material fact and whether the district court applied the relevant substantive law. See Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). The burden is on Westwind to show significant probative evidence, and the fact that the evidence it needs to support its claim may be in the possession of Carlson does not alleviate its burden. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).
 
 
 18
 The district court granted Carlson summary judgment based on section 1974 of the California Code of Civil Procedure which provides:
 
 
 19
 No evidence is admissible to charge a person upon a representation as to the credit of a third person, unless such representation, or some memorandum thereof, be in writing, and either subscribed by or in the handwriting of the party to be charged. This section is a Statute of Frauds provision and is to be applied in a manner that is consistent with the manner in which subdivision 2 of Section 1624 of the Civil Code is applied.
 
 
 20
 Cal.Civ.Proc.Code § 1974 (West 1983). Section 1974 applies to all third party deceit actions, whether based on negligent or fraudulent misrepresentations. Seneca Communications, Inc. v. International Bank of Cal., 163 Cal.Rptr. 176, 180 (Cal.Ct.App.1980).
 
 
 21
 A. Statute of Frauds.
 
 
 22
 Westwind summarily argues that the statute of frauds has been met, but it has not produced any writings memorializing Smith's alleged misrepresentation to Westwind employees. Nor would the two documents it seeks through further discovery, the daily basis reports of Anchor's receivables and the billing records of Carlson, satisfy this requirement.
 
 B. Main Purpose Rule
 
 23
 Westwind next argues that the main purpose rule, section 2794(4) of the California Civil Code, exempts it from the statute of frauds. The main purpose rule exempts from the statute of frauds those oral promises made for the "main purpose" or "leading object" of receiving a consideration beneficial to the promisor. Michael Distrib. Co. v. Tobin, 37 Cal.Rptr. 518, 523 (Cal.Dist.Ct.App.1964).[3]
 
 
 24
 Westwind argues that Carlson misrepresented Anchor's financial status in order to induce Westwind to provide seafood to Anchor on credit. Westwind claims that Carlson "knew at the relevant time, and at a time when Carlson itself may have been owed as much as $25,000 by [Anchor], that if [Anchor] did not have access to such credit purchases, its sales would suffer, and it would be unable to pay its creditors, including Carlson." To show that Anchor was a bad credit risk and that Carlson was aware of this, Westwind points to the fact that Carlson used historical data provided by Anchor to project Anchor's cash flow, instead of actual receivables owing to Anchor. This resulted in over-optimistic cash receivable projections for the week ending May 29, 1989, through the week ending June 26, 1989. Carlson used these projections to advise Westwind that Anchor could pay its debt if extended credit by Westwind.
 
 
 25
 1. Lack of Evidentiary Support.
 
 
 26
 We find that these allegations are not sufficient to defeat the summary judgment motion. Westwind has provided no evidence, beyond mere speculation, manifesting a primarily pecuniary motive on Carlson's part. The disputed conversations between Smith and Westwind employees occurred on May 26 and May 30. This provides little, if any, time for Smith to have recognized that the projections were overly optimistic and to have planned on misrepresenting Anchor's finances for the main purpose of getting Carlson's fees paid. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (although inferences are to be drawn in favor of the nonmoving party, if the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial).
 
 
 27
 Nor has Westwind provided evidence that Carlson actually benefitted from its alleged misrepresentation from which we could infer a personal pecuniary motive. The only "benefit" Carlson received from Anchor was its normal fees for its cash scheduling services, which it would have been owed regardless of its representations to Westwind. Although it is plausible that the revenue generated by selling Westwind's seafood could have facilitated Anchor's payment of Carlson's fees, Westwind offered no proof that Anchor sold the seafood before it paid any or all of its debt to Carlson. It is not even clear that Anchor owed Carlson a significant sum at the time of the alleged misrepresentations. Despite Westwind's assertion in its brief that Carlson was "unpaid to the tune of approximately $25,000 at the time of the telephone conversations," we can find nothing in the record to support this. In Westwind's affidavit, it expressly states that it does not know the balance owed Carlson at that time. Smith states in her affidavit that neither she nor Carlson benefited or profited from the phone conversation or sale of fish. Even Westwind's employees admitted during their depositions that they "did not know" or had "no reason to believe" Carlson obtained a financial benefit from the alleged misrepresentation. In fact, Carlson deferred a payment owed to it by Westwind sometime in early June. If its "main purpose" was to receive payment of its debts, rather than to perform its function as Westwind's accountant, this deferment makes little economic sense.
 
 
 28
 Because Westwind has provided no evidentiary support for its speculative allegations as to Carlson's motives, we are unwilling to infer an intent on Carlson's part to deceive Westwind. We are especially wary of doing so in light of the fact that no California case law extends the main purpose rule to a situation where the hypothetical benefit is as attenuated and indirect as is the benefit to Carlson.
 
 2. Scope of the Main Purpose Rule
 
 29
 The Legislative Committee Comment accompanying section 1974 cites Michael Distributing Co. v. Tobin, 37 Cal.Rptr. 518 (Cal.Ct.App.1964), as an example of the main purpose rule. In Tobin, a corporate officer and principal stockholder of a construction company orally promised a lumber supplier that he personally would guaranty a loan to the company for lumber. Id. at 521. The California Court of Appeal held that since the promisor had a very direct and personal interest in the use of the lumber and the pecuniary benefit that it could reap, it could be concluded that this benefit was the "main object" of his promise and the main purpose exception to the general statute of frauds applied. Id. at 524. Tobin in turn relies on Johnson v. Coyne, 277 P. 1093 (Cal.Ct.App.1929). Here the original owner of a home promised a building contractor that he would pay for work performed on the house if the purchaser failed to do so. The California Court of Appeal found that the original owner directed the work on the home and could not sell the home without the work and thus the main purpose rule applied. Id. at 1095. Neither case supports the extension of section 2794 to Carlson's alleged misrepresentation. Westwind admitted that Carlson did not promise to act as a guarantor of Anchor's debt. Further, Carlson had no ownership or other long-term interest in Anchor; in fact, its cash scheduling relationship was terminated by Anchor before the date Anchor's debt to Westwind became due.
 
 
 30
 Westwind relies on Tenna Manufacturing Co., Inc., v. Columbia Union National Bank & Trust Co., 484 F.Supp. 1214 (W.D.Mo.1980), a federal district court case from Missouri, for support.[4] In Tenna, a seller of goods made a credit check of a prospective buyer over the phone. After the bank materially misrepresented to the seller that the buyer was credit-safe, the seller extended credit to the buyer. Subsequently, the bank declared a default on its loans to the buyer and took possession of substantially all the assets of the buyer, including the actual merchandise the seller had sold the buyer. Id. at 1218. The court, in applying what it labeled an "unchartered [sic] segment of [Missouri] law," held that the statute of frauds did not apply because the bank was liable as a trustee ex-maleficio to the extent of any unjust enrichment. Id. at 1220. The court treated the bank as a constructive trustee of only that merchandise appropriated by the bank that was actually and directly traceable from the seller. Id. at 1220 & 1220 n. 6. This case clearly is distinguishable from our own. Westwind has not argued that Carlson received goods directly traceable to Westwind.
 
 
 31
 We find Seneca Communications, Inc. v. International Bank of California, 163 Cal.Rptr. 176 (1980), the only case that has applied the main purpose rule to section 1974, controlling. In Seneca, the California Court of Appeal found that the allegation that a bank misrepresented a depositor's financial status to a merchant in order to retain the depositor's patronage was not sufficient to remove it from the statute. Id. at 181. The court rejected extending the exception to indirect or secondary benefits; only when the defendant made the representation for the primary purpose of directly advancing his own interests does the exception apply. Id. Seneca thus supports our conclusion that the possibility that Carlson could have benefitted directly from its alleged misrepresentation to Westwind is too attenuated.
 
 
 32
 We find that Westwind has not shown significant probative evidence to establish a genuine dispute of fact regarding Carlson's intent to misrepresent Anchor's financial status for its own benefit. Even if Westwind was able to show that the proceeds generated by the sale of Anchor seafood eased Anchor's cash flow problems, enabling it to pay Carlson's fees, the benefit would be too indirect to qualify under California law for the main purpose rule.
 
 
 33
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 Carlson also asserted a number of alternative defenses which have not been argued on appeal
 
 
 [2]
 Although Westwind failed to comply with the affidavit requirement of Rule 56(f), we find that Westwind's Memorandum and Declaration in Opposition were sufficient to entitle it to Rule 56(f) consideration. See Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1306 n. 1 (9th Cir.1986) (plaintiff's opposition to motion for summary judgment, incomplete affidavit, motion to compel discovery, interrogatories, and to provide witnesses sufficient to raise Rule 56(f) issue); Program Eng'g, Inc. v. Triangle Publications, Inc., 634 F.2d 1188, 1193 (9th Cir.1980) (motion to strike part of summary judgment motion sufficient to raise 56(f) issue); cf. Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir.1986) (memoranda and declaration in opposition to summary judgment not sufficient to raise 56(f) issue)
 
 
 [3]
 The 1970 amendment to section 1974, added to make the application of section 1974 coextensive with the suretyship exceptions (including section 2794) to the general statute of frauds, renders pre-1970 surety case law relevant to the interpretation of section 1974. Leg.Com. Comment to the Senate 1970 Amendment of § 1974. See also Seneca Communications, 163 Cal.Rptr. at 180
 
 
 [4]
 For our purposes, the Missouri statute of frauds and interpretive case law is comparable to California's. See, e.g., Tenna, 484 F.Supp. at 1219-20